741 A.2d 170 (1999)
326 N.J. Super. 356
HIGH VOLTAGE ENGINEERING CORPORATION, Plaintiff-Respondent,
v.
PRIDE SOLVENTS & CHEMICAL CO. OF NEW JERSEY, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 8, 1999.
Decided December 9, 1999.
*172 Thomas N. Ganiaris, Cherry Hill, for defendant-appellant (Mr. Ganiaris, on the brief).
McCarter & English, for plaintiff-respondent (Keith E. Lynott, of counsel; J. Forrest Jones, on the brief).
Before Judges HAVEY, KEEFE and A.A. RODRÍGUEZ.
*171 The opinion of the court was delivered by HAVEY, P.J.A.D.
By order dated September 15, 1997, Judge Hamlin in the Chancery Division confirmed an arbitration award in favor of plaintiff High Voltage Engineering Corporation (High Voltage). Relative to this appeal, the judge confirmed the arbitrators' determination that: (1) defendant Pride Solvents & Chemical Company of New Jersey, Inc. (Pride) breached an August 25, 1989 Settlement Agreement between the parties by filing a complaint in the Law Division against High Voltage concerning High Voltage's duty to remediate an industrial site being purchased by Pride; and (2) High Voltage was entitled to reasonable counsel fees as damages as a result of Pride's breach. Judge Hamlin referred the matter to a Special Master to fix the fees and costs owed to High Voltage.
The Master awarded High Voltage $84,605.59. By final judgment dated October 9, 1998, Judge Messina adopted the Master's findings and directed that the counsel fees owed to High Voltage be deposited with the Clerk of the Superior Court subject to High Voltage's satisfaction of terms fixed by the arbitrators.
Pride appeals, arguing that the arbitration award must be vacated because: (1) the arbitrators exceeded their authority in awarding counsel fees in contravention of the "American Rule"; (2) the award of fees was not based on any evidence in the arbitration record; and (3) the award was "[n]either [m]utual, [f]inal [n]or [d]efinite." We reject the contentions and affirm.
Prior to 1978, High Voltage was the owner of an industrial site located in Middlesex County. From the 1930's through 1978, it conducted manufacturing operations at the site, resulting in contamination of the soil and groundwater. In 1978, High Voltage sold the site to Mellen Chemicals, Inc. (Mellen). After discovering *173 the contamination in 1985, Mellen instituted suit against High Voltage in the United States District Court under the New Jersey Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to -14. In 1987, Mellen entered into negotiations to sell the site to Pride, subject to ECRA compliance by High Voltage.[1]
In order to effectuate the sale to Pride, Mellen and the parties executed a Settlement Agreement on August 25, 1989. Pursuant to the Settlement Agreement, High Voltage entered into an Administrative Consent Order (ACO) with the NJDEP under which it assumed responsibility for remediation of the site. The Settlement Agreement provided that High Voltage had the exclusive right to negotiate with the NJDEP in achieving ECRA compliance. Pertinent here was a provision for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof...." The arbitrators were directed to:
interpret the provisions of this Agreement in accordance with New Jersey law, but shall not have the authority or power to modify or alter any condition or provision of this Agreement, or any modification thereof, or to render any award which by its terms has the effect of altering or modifying any express condition or provision of this Agreement or modification thereof.
On March 16, 1993, Pride instituted an action in the Chancery Division demanding injunctive relief and compelling High Voltage to comply with the NJDEP's ACO as required by the Settlement Agreement. High Voltage counterclaimed, alleging that it was entitled to counsel fees because Pride breached the Settlement Agreement by initiating a lawsuit instead of submitting the remediation issue to arbitration. High Voltage also demanded counsel fees as a prevailing party under the New Jersey Environmental Rights Act, N.J.S.A. 2A:35A-10, and the Frivolous Lawsuit Act, N.J.S.A. 2A:15-59.1. As a result of the litigation, the NJDEP inspected the site and, on September 29, 1993, advised High Voltage that there were a number of remediation steps not yet addressed. If therefore directed High Voltage to submit a revised schedule "that incorporates the remedial measures set forth below...within 30 days...." Pride thereupon voluntarily dismissed its complaint without prejudice. High Voltage's counterclaim for counsel fees was dismissed with prejudice. On High Voltage's appeal, we affirmed in part and reversed in part, concluding that High Voltage was entitled to submit the issue of Pride's breach of the Settlement Agreement to arbitration.
After a hearing the arbitrators determined that Pride had breached the Agreement by instituting its action instead of submitting to arbitration. The panel determined that High Voltage was entitled to counsel fees as damages incurred as a result of the lawsuit, but directed that the fees be paid into an escrow account, subject to High Voltage's compliance with the NJDEP's cleanup conditions.
High Voltage filed an action in the Chancery Division seeking to confirm the arbitration award and for a remand to the arbitration panel to determine the amount of counsel fees. Pride filed a separate action in the Law Division seeking to vacate or modify the award. After the matters were consolidated, Judge Hamlin, as noted, confirmed the award and referred the matter to a Special Master to quantify the amount of fees and costs due to High Voltage by order dated September 15, 1997. Upon the Master's finding that High Voltage was owed $84,605.59, Judge Messina entered a final judgment confirming the Master's findings on October 9, 1998.

I
An arbitrator's authority to resolve a dispute is based upon the contract between the parties. Communications Workers of Am., Local 1087 v. Monmouth County Bd. of Soc. Servs., 96 N.J. *174 442, 476 A.2d 777 (1984). "Thus, the jurisdiction and authority of the arbitrator are circumscribed by and limited to the powers delegated to him." Id. at 448, 476 A.2d 777 (citing Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 217, 405 A.2d 393 (1979)); Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 155, 393 A.2d 278 (1978). Consequently, "[a]ny action taken beyond that authority is impeachable." In re Arbitration Between Grover and Universal Underwriters Ins. Co., 80 N.J. 221, 229, 403 A.2d 448 (1979) (holding that arbitrator's authority is limited to carrying out intent that case be decided in accordance with law).
It is now settled that an arbitration award may be vacated only in cases of fraud, corruption or similar wrongdoing as provided by the arbitration statute, N.J.S.A. 2A:24-8. In re Arbitration Between Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 355-59, 640 A.2d 788 (1994). Under Chief Justice Wilentz's concurring opinion in Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 610 A.2d 364 (1992), endorsed in Tretina, an award should not be vacated even though it may be based on a mistake in law. Id. at 519, 610 A.2d 364 (Wilentz, J., concurring); Tretina, supra, 135 N.J. at 357, 640 A.2d 788. Chief Justice Wilentz observed in Perini, supra, however, that:
For those who think the parties are entitled to a greater share of justice, and that such justice exists only in the care of the court, I would hold that the parties are free to expand the scope of judicial review by providing for such expansion in their contract; that they may, for example, specifically provide that the arbitrators shall render their decision only in conformance with New Jersey law, and that such awards may be reversed either for mere errors of New Jersey law, substantial errors, or gross errors of New Jersey law and define therein what they mean by that.
[129 N.J. at 548-49[, 610 A.2d 364.]]
Under this approach, an arbitration award could be vacated based on a mistake in law because the parties specifically provided in the Settlement Agreement that the arbitrators shall render their decision in conformance with New Jersey law.

II
Pride argues that the award must be vacated because the arbitration panel ignored the provision of the Settlement Agreement that the arbitrators were to be governed by New Jersey law in resolving any dispute. Pride points out that there is no provision in the Settlement Agreement for the award of attorney's fees in the event of a breach, and argues that the award was contrary to the traditional "American Rule" that fees shall not be awarded to the prevailing party unless provided by statute or contractually authorized.
Pride misconstrues the contract language. It does not provide that the arbitrators "shall render their decision only in conformance with New Jersey law...." Id. at 548, 610 A.2d 364. Rather, the Settlement Agreement provides only that the arbitrators, in resolving any controversy, "shall interpret the provisions of this Agreement in accordance with New Jersey law[.]" (Emphasis added). Presumably, the arbitrators interpreted the contract in accordance with New Jersey law in determining that Pride had breached the Settlement Agreement. Pride does not argue to the contrary before us. The arbitrators not only were required to determine whether there was a breach, but also what appropriate remedy should be given in order to make the party who was harmed, in this case High Voltage, whole as a result of the breach. The Settlement Agreement is entirely silent as to the arbitrators' power to fashion a remedy. As we stated in Commerce Bank v. DiMaria Constr., Inc., 300 N.J.Super. 9, 19, 692 A.2d 54 (App.Div.), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997), cert. denied, 522 *175 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998):
"arbitrators may conclude that the only way to provide complete relief for a breach of contractthe only way to actually put the injured party in as good a position as it would have been in if the contract had not been breachedis to award any counsel fees which had to be incurred to prove the breach...."

[Citations omitted.]
Here, the "only way to provide complete relief" to High Voltage was the recoupment of the fees incurred by it as a result of Pride's breach.

III
Pride next argues that the award of counsel fees should be vacated because it was not based on any evidence produced during the arbitration proceedings. Pride points to the fact that during the proceedings High Voltage "failed to offer any evidence at the arbitration hearing of the amount of its attorneys fees." Pride claims that it relied "upon the fact that evidence of High Voltage's attorneys fees was not submitted to the Arbitration Panel at the hearing."
If the arbitrators decide a matter not submitted to them, that matter can be excluded from the award. Tretina, supra, 135 N.J. at 358, 640 A.2d 788. However, here it is clear that the arbitrators were to determine whether Pride breached the Settlement Agreement and whether High Voltage was entitled to an award of money damages with regard to the losses it suffered as a result of the breach. One of Pride's briefs to the panel framed the issue similarly, specifying that the panel would determine whether "High Voltage is thereby entitled to legal fees." The issue presented is exactly the issue the arbitrators decided. Presumably, the parties presented to the arbitrators their competing positions as to the breach issue and, if a breach occurred, what remedy was appropriate.

IV
Pride also argues that the award was not mutual, final or definite because the award did not determine the quantum of damages, and the conditions established in the award are not final.
The Court in Tretina, supra, 135 N.J. at 363, 640 A.2d 788, noted that "in limited circumstances a court can remand to an arbitrator for reconsideration or clarification." For example, in Jersey City Police Officers Benevolent Ass'n v. City of Jersey City, 257 N.J.Super. 6, 11, 607 A.2d 1314 (App.Div.1992), we directed the trial court to resubmit one issue to the arbitrator where it "had been neither submitted to nor decided by the arbitrator" in the initial proceedings. Since the arbitrator had not exercised his powers relating to that issue, his authority had never expired. Ibid. "Likewise, if the obligations under an award are unclear to the parties, a court may resubmit the question to the arbitrator for clarification." Tretina, supra, 135 N.J. at 363, 640 A.2d 788. Such resubmissions allow the arbitrator to settle the issues without judicial encroachment on the arbitration process, not to explain how the arbitrator arrived at the conclusions contained in the award. Id. at 363-64, 640 A.2d 788.
Therefore, Judge Hamlin had the authority to remand the matter to the arbitrators. When the judge considered remand, however, Pride resisted, urging the court to "take the matter and resolve it in this court." In view of Pride's position, Judge Hamlin decided that the arbitrators had concluded their duties as charged under the Settlement Agreement and did everything but fix the amount due High Voltage. This omission was understandable in view of the fact that the arbitrators were experts in environmental matters, not in awarding counsel fees. However, their failure to take testimony and award a bottom-line figure does not mean that their award was reached by "undue means." N.J.S.A. 2A:24-8a. Judge Hamlin *176 took the practical and expedient approach by remanding the remaining issue to an experienced member of the bar to quantify the counsel fees due High Voltage. Pride had full opportunity before the Special Master to challenge the reasonableness of the fees demanded by High Voltage.
Pride also argues that the award was "indefinite" because of the conditions imposed by the arbitrators on High Voltage's entitlement to counsel fees. However, the arbitrators' award of damages against Pride was unconditional and definite. The conditions imposed by the arbitrators pertained to when and under what circumstances the money should be released to High Voltage. As High Voltage points out in its brief, "[i]t is High Voltage, not Pride, that has additional burdens and less certainty as a result of this conditional remedy. Because Pride is not prejudiced by this aspect of the award, Pride should not be entitled to raise objections to it." We agree.
Affirmed.
NOTES
[1] Pride ultimately purchased the site.