**EASTMAN MEDICAL PRODUCTS, INC., Movant,**

v.

**E.R. SQUIBB & SONS, INC., Respondent.**

**No. Civil Action No. 3:02–MC–0009–M.**

United States District Court, N.D. Texas, Dallas Division.

April 15, 2002.

Steven D. Roland, Sigrid Owczarek, Sedgwick Deter Moran & Arnold, San Francisco, CA, Diana R. Warnecke, Sedgwick Deter Moran & Arnold, Dallas, TX, for E.R. Squibb & Sons Inc.

James A. Fisher, Fitzpatrick Hagood Fisher & Holmes, Dallas, TX, for Eastman Med. Products Inc.

### MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

Before the Court is "Plaintiff's Motion to Transfer, or, In the Alternative, to Stay Action," filed February 11, 2002. For the reasons stated herein, the Court **DENIES** Respondent's Motion to Transfer this matter to the United States District Court for the District of New Jersey, Trenton Division, and **DENIES** its Motion to stay this matter pending a determination of a parallel matter pending before the district court in New Jersey. This disposition renders moot Respondent's Alternative Motion to Stay the Court's determination of Movant's Motion for Judgment Confirming Arbitration Award and its Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award.

## FACTUAL PREDICATE

This case involves a series of alleged breaches by respondent E.R. Squibb & Sons, Inc. ("Squibb") of both express and implied obligations under a contract dated January 31, 1996 and styled "License, Distribution and Manufacturing Agreement" (the "License") between ConvaTec, a division of Squibb, and movant Eastman Medical Products Inc. ("Eastman"). Article 24 of the License provides for arbitration of the claims asserted by Eastman against Squibb.

Before entering into the License with Squibb, Eastman developed a line of products designed to control infection in catheterized inpatients, ostomates, paraplegics, and chronic incontinents, and to improve the safety of health care workers who treat such patients. Eastman's products incorporated a new technology using an acrylic, biodegradable, cross-link polymer able to encapsulate bacteria, viruses, and fungi present in the excretory fluid. This product in the Eastman line was the Patho–Sorb Urinary Drainage System ("Patho–Sorb"). Another similar line, the Ile–Sorb product line, was also the subject of the arbitration.

Under the License, Squibb obtained exclusive rights to distribute, market and sell the Patho–Sorb and Ile–Sorb worldwide for a term of seventeen years, beginning with the first commercial sale by Squibb of either of the products. In return for the extensive rights, Squibb was contractually obligated to "use reasonable efforts" to market and distribute Eastman's products, and to meet several payment obligations.[1]

Article 24 of the License, entitled "Arbitration," provides that "[a]ny disputed controversy, or difference which may arise between the parties out of or in connection with this AGREEMENT, or for the breach thereof, shall be finally settled by arbitration pursuant to the rules then prevailing of the American Arbitration Association [ ("AAA") ]," and that "[s]uch arbitration shall be held in (a) Somerset County, New Jersey, if the demand for arbitration is initiated by EASTMAN." License at 45. Article 25, Section C, entitled "Governing Law," provides that the License "shall be construed in accordance with the laws of the United States, State of New Jersey."

On June 8, 2000, Eastman made a written demand for arbitration of its claims that Squibb had breached several obligations under the License. In accordance with the procedure specified in the License, an arbitration panel (the "Panel") was selected, consisting of Lewis R. Sifford, Esq., Honorable Richard S. Cohen (Ret.), and Honorable Dean M. Trafelet (Ret.). A six-week arbitration hearing was held between October 1, 2001 and November 11, 2001, in Somerset County, New Jersey, the venue mandated in the License. The submission of evidence of attorneys' fees and arbitration expenses was reserved by agreement of the parties. On January 4, 2002, the Panel issued a unanimous Arbitration Panel Ruling (the "Initial Ruling") finding that Squibb breached five separate obligations under the License, causing Eastman to sustain damages totaling $3,553,333, including prejudgment interest.[2] The Panel found Squibb was entitled to credits totaling $300,000. The Initial Ruling did not ad-

---

1. During the first three years of the License, Squibb had to expend a minimum of $500,000 per year in direct marketing and promotional support (including only expenses for direct field sales efforts, costs for clinical trial and amounts paid to third parties for marketing and promotional support services), pay Eastman royalties based on a percentage of net sales revenue derived from sales of Eastman products, provide quarterly reports,

and assume and promise to perform all of Eastman's obligations under an Exclusive Manufacturing Agreement between Eastman and Dravon Medical, Inc. and an Exclusive Supply Agreement between Eastman and Cytec Industries, Inc.

2. The Panel found that Squibb had breached its agreement to use reasonable efforts consistent with normal commercial practices to

dress Eastman's claim for post-award interest. The Initial Ruling directed Eastman to submit evidence of its attorneys' fees and arbitration expenses, stating that:

> The Panel hereby invites Eastman, by and through its counsel, to submit to the panel all time and billing records and its costs of this arbitration for further consideration by this panel. This does not constitute a determination that fees, expenses and costs of this arbitration, in any amount, will be awarded.

Eastman submitted evidence of the arbitration expenses and attorneys' fees it had incurred. In the meantime, a dispute arose over an alleged miscalculation of $119,553.10 in the Initial Ruling. The total amount of damages found by the Panel was greater than the sum of various components of damages described in the explanatory paragraphs in the Initial Ruling. On January 9, 2002, by letter, Squibb requested that the Panel correct the error. In this letter, Squibb also stated that the Panel did not have authority to award fees and costs. On January 10, 2002, Eastman responded, pointing out that the difference between the total amount of damages and the sum of the components mentioned in the explanatory paragraphs may have been caused by the Panel's inadvertent omission of its explanation of how pre-award interest on a component of damages had been calculated. On January 31, 2002, the Panel issued its final award ("Final Award"), reiterating its unanimous findings that Squibb had breached the License in five distinct respects, but slightly reducing the damages total from the Initial Ruling to $3,524,377.90. The Panel still found that Squibb should receive the undisputed $300,000 credit.

In addition, with one member dissenting, the Panel awarded Eastman $500,242.67 for arbitration expenses, based, in part, on the specific finding that Squibb had intentionally misrepresented facts to Eastman.[3] Including these ex-

---

market and distribute Ile–Sorb, but not Patho–Sorb, because "obstacles to marketing Patho–Sorb were insurmountable, and no royalties would have resulted."

**3.** Regarding attorneys' fees and costs of arbitration, the Panel, in the Final Award, stated that:

> One of the purposes of the award of attorneys' fees, expenses and costs is to place an aggrieved or injured party in the position it should have enjoyed before the broken promises. If we utilize this particular purpose, then presumably we should award attorneys' fees, expenses and costs to Eastman. However, the penalty we [could] impose upon Eastman for the failure of the Patho–Sorb claim is the denial of attorneys' fees. We believe, however, because Eastman ultimately prevailed on the Ile–Sorb claim and other contractual claims, that expenses and costs should be awarded to Eastman on the entire proceeding because Eastman could not have recovered its damages absent the arbitration proceedings. In order to achieve an equitable result and to make Eastman whole on the claims upon which Eastman prevailed, it is our decision that it is just, fair, reasonable and proper to award to Eastman its expenses and costs submitted in the amount of $500,242.67. We find such sum to represent the fair, reasonable and necessary expenses and costs incurred by Eastman in the prosecution of these arbitration proceedings.

Final Award at 5. The partial dissenting member of the Panel disputed the award of fees, stating:

> It is an interesting question whether we have the authority to award a party a broad range of litigation expenses in a case in which the parties have agreed to be bound by New Jersey law, which does not ordinarily permit such an award in court proceedings. However, the answer to the question does not affect my position. Assuming we have that authority, we should not exercise our discretionary judgment to award Eastman its expenses of some $500,000 ... [because] [t]he great bulk of the parties' expenses was related to the litigation of the Patho–Sorb claim, a claim that simply was not going anywhere.

penses, the total Final Award amount was $3,724,620.50. The Panel also awarded post-award interest at the rate of six percent per annum.

On February 1, 2002, Eastman commenced this proceeding by filing a Motion for Judgment Confirming Arbitration Award. On February 7, 2002, Squibb commenced a civil action against Eastman in the United States District Court for the District of New Jersey, Trenton Division, by filing a Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award, and for Stay. The case was docketed Civil Action No. 02–CV–573. On February 11, 2002, Squibb filed, in this Court, its Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award, and for Stay, essentially raising the same points presented in its New Jersey Petition.

On February 11, 2002, Squibb moved to transfer this action to the United States District Court for the District of New Jersey, Trenton Division pursuant to 28 U.S.C. § 1404(a). In the alternative, it seeks a stay of this matter pending resolution of parallel proceedings now pending in the District of New Jersey. In the further alternative, it seeks a stay of proceedings pursuant to 9 U.S.C. § 12, with respect to Eastman's Motion for Judgment Confirm-

ing Arbitration Award pending briefing, hearing, and determination of Squibb's Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award, and for Stay.[4] Eastman contends that Squibb is upsetting the benefits gained from the parties' agreement to arbitrate by relitigating issues decided by a fair and impartial Panel selected pursuant to the License. This Memorandum Order and Opinion addresses whether a transfer or stay is appropriate under the circumstances.

## ANALYSIS

Eastman argues that Squibb waived any right to contest the validity of the arbitration award, in the absence of fraud, corruption, or bad faith. In doing so, it rests on the terms of the License, which provide that "[t]he decision by the arbitrators shall be binding and conclusive on the parties, their successors and assigns, and they shall comply with such decision in good faith...."[5] It further maintains that, under the venue terms of the Federal Arbitration Act ("FAA") and the License, it could bring a motion to confirm the arbitration award in any court having jurisdiction.[6] Squibb contends that the arbitrators ignored New Jersey law ("acted in manifest disregard of law and reason" to the law) which allegedly does not allow for

Final Award at 6. Notably, the retired New Jersey Court of Appeals judge, the Honorable Richard S. Cohen (Ret.) was the partial dissenter.

4. The parties have requested this matter to be set for hearing. Because the Court has determined that a transfer to New Jersey or a stay pending a determination by the New Jersey Court is not warranted, the Court will hear oral argument on Respondent's Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award and Movant's Motion for Judgment Confirming Arbitration Award. Respondent's Alternative Motion for Stay of the Court's determination of Movant's Motion for Judgment Confirming Arbitration

Award pending a determination of Respondent's Motion to Transfer and its Petition for Order Vacating in Part, Modifying and Correcting Arbitration Award is thus moot.

5. Eastman App. at 67–68.

6. Both parties agree that the FAA governs all questions as to interpretation and enforceability of arbitration agreements, such as this, included in contracts "involving commerce." *See Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The License states that "[j]udgment upon the award may also be entered in any other court having jurisdiction." Eastman App. at 67–68.

the costs award made by the Panel, and that the District of New Jersey, Trenton Division, is a more appropriate venue for the issues raised in this matter.

Eastman is a California corporation having its principal place of business in California. Eastman has no office or agent in New Jersey. Squibb is a Delaware corporation having its principal place of business in New Jersey. It maintains active agents in Texas and has admitted continuous and systematic contacts here.

The License mandated that the arbitration hearing be held in New Jersey. However, it did not require that any action for entry of judgment on the award be held in New Jersey. The venue portion of the License states:

> [T]he judgment upon the award rendered in such arbitration may be entered in any Court having jurisdiction thereof, and be enforceable, final and binding against the parties.... [E]ach party hereby submits itself to the jurisdiction of the Courts of the place where the arbitration is held, but only for the entry of judgment with respect to the decision of the arbitrators hereunder. Judgment upon the award may also be entered in any other court having jurisdiction.[7]

This action was thus not prohibited under the terms of the License. Further, as discussed below, under the "first to file rule," the subsequently filed New Jersey action should defer to this Court, and a 28 U.S.C. § 1404 transfer is not warranted.

*A. First to File Rule*

■ In *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*,[8] a contract dispute was submitted to arbitration pursuant to the FAA. The arbitration was conducted in Alabama. Cortez, the non-prevailing party, filed a complaint to vacate or modify the arbitration award in the Southern District of Mississippi. Seven days later, the prevailing party filed an action to confirm the award in Alabama. Cortez moved to dismiss or stay the later-filed Alabama case, or to transfer it to Mississippi. The court in Alabama denied the motions—even though the Mississippi case was filed first—and proceeded to confirm the award. The Eleventh Circuit affirmed.

The Supreme Court reversed. The Court expressly rejected the argument that, under the FAA, motions to confirm, vacate, or modify arbitration awards must be filed in the district where the award was made. The Court held that the ensuing litigation need not be brought in the district in which the award was rendered, and that "principles of deference to the court of first filing" should be applied in deciding which of the parallel proceedings should take precedence.

In *Sutter Corp. v. P & P Industries, Inc.*, the Fifth Circuit followed the "first to file" rule.[9] An arbitration proceeding was held in Dallas, Texas. The losing party filed a motion to vacate the arbitration award in Oklahoma. The prevailing party subsequently filed suit in Dallas, seeking to confirm the arbitration award. The non-prevailing party unsuccessfully moved, in Texas, to dismiss, transfer, or stay the Texas action. The district court denied the motion.

The Fifth Circuit reversed, holding that even though the arbitration had taken place in Dallas, the district court in that venue abused its discretion in not deferring to the Oklahoma court. "The Fifth Circuit adheres to the general rule that

---

**7.** Eastman App. at 67–68.

**8.** 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).

**9.** 125 F.3d 914, 920 (5th Cir.1997).

the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."[10]

Squibb tacitly argues that, because the two cases were filed "almost simultaneously," the "first to file" rule is less important. The case law does not support this view. This Court, because it sits within the "first filed" venue, denies Respondent's Motion to stay or dismiss the action in deference to the New Jersey action. There must be uniformity in actions involving equivalent counterparts. Although the "first to file" rule is pedestrian, its simplicity furthers comity between courts and should not be casually ignored.[11] Squibb has not presented this Court with "exceptional circumstances" to justify a departure from the "first to file" rule.[12] However, simply because the "first to file" rule applies such that the New Jersey court should defer to this Court as the "first filed" venue, does not mean that this Court cannot, in its discretion, decide to transfer the matter pursuant to 28 U.S.C. § 1404.

### B. 28 U.S.C. § 1404 Transfer

Motions to transfer venue are governed by 28 U.S.C. § 1404(a).[13] Squibb bears the burden of demonstrating to the Court that it should transfer the case and the decision rests within the sound discretion of the Court.[14] Squibb's burden requires a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony.[15] Further, the Court may not transfer venue where the result will be merely to shift the burden of the trial from one party to the other.[16] The decision to transfer is made to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.[17] Section 1404 imposes a two-part test. First, the transferee district must be

**10.** *Id.* (quoting *Save Power Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 948 (5th Cir. 1997)).

**11.** While this Court is bound by Fifth Circuit precedent, the Third Circuit, in which New Jersey sits, also follows the "first to file rule." In *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929–30 (3d Cir.1941), it stated that:

It was long ago laid down by Chief Justice Marshall as a salutary rule that '[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it'. . . . The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and effort.

*Id.*

**12.** In *EEOC v. Univ. of Penn.,* 850 F.2d 969, 980 (3d Cir.1988), "exceptional circumstances" were presented justifying a departure from the "first to file" rule. There, a preemptive suit by the target of an EEOC investigation was precluding the agency from enforcing subpoenas and performing its functions.

**13.** 28 U.S.C. § 1404(a) reads:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**14.** *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989).

**15.** *See Young v. Armstrong World Indus., Inc.,* 601 F.Supp. 399, 401–02 (N.D.Tex.1984) (Sanders, J.).

**16.** *See Enserch Int'l Exploration, Inc. v. Attock Oil Co.,* 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987) (Fitzwater, J.).

**17.** *See Stabler v. New York Times, Co.,* 569 F.Supp. 1131, 1137 (S.D.Tex.1983).

one where the case could have been originally brought, and second, the transfer must be in the interest of justice and serve the convenience of the parties and witnesses.[18]

A court may not transfer a case unless the plaintiff could have sued all of the defendants in the transferee court:

[A] transfer is authorized by [28 U.S.C. § 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; i.e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.[19]

Here, Squibb is incorporated in Delaware and has its principal place of business in New Jersey. Eastman could thus have sued it in New Jersey.

■ In determining whether a transfer is warranted, the Court considers the following factors: the availability and convenience of the witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if the transfer is granted; and the plaintiff's choice of forum.[20]

■ The only contacts tying this case to Texas are the existence of Eastman's counsel in Texas, which is entitled to little weight,[21] and the fact that Texas was Eastman's choice of forum, which is usually entitled to less weight where none of the operative facts, as is the case here, occurred in the selected forum.[22] However, the most important factor in the § 1404 analysis—the convenience of witnesses, does not tip the balance in favor of a transfer to New Jersey.[23] As stated by Squibb, it "does not dispute that the convenience of witnesses weighs neither in favor of, nor against transfer."

Squibb correctly notes that New Jersey is the location of the arbitration hearing and Panel decision, and that numerous telephone calls and correspondences were exchanged between California and New Jersey during the negotiation and formation of the License. However, the matter in this Court is an extremely limited proceeding. Under 9 U.S.C. § 10, the grounds for vacating an arbitration award are few.[24] A six week hearing—the *alter-*

---

**18.** *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.,* 5 F.3d 28, 31–33 (3d Cir.1993); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

**19.** *Shutte,* 431 F.2d at 24.

**20.** *Chretien v. Home Depot U.S.A., Inc.,* 169 F.Supp.2d 670, 672 (S.D.Tex.2001).

**21.** *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 826 n. 2 (S.D.Tex.1993) (agreeing with "legion other courts" that the location of plaintiff's counsel "is entitled to little or no consideration at all").

**22.** *Robertson v. Kiamichi Railroad Co.,* 42 F.Supp.2d 651, 656 (E.D.Tex.1999) (plaintiff's choice of forum is entitled to less weight where plaintiff does not reside there, and where none of the operative facts occurred there).

**23.** *Gundle Lining Construction Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1165 (S.D.Tex.1994); *Fletcher v. Southern Pacific Transportation Co.,* 648 F.Supp. 1400, 1401–02 (E.D.Tex.1986).

**24.** In *Harris v. Parker College of Chiropractic,* 286 F.3d 790 (5th Cir.2002), the Fifth Circuit, in affirming this Court's confirmation of an arbitration award, placed its imprimatur on the "extraordinarily narrow" review of an arbitration award under the FAA. However, in doing so, the Court also stated that an additional ground for vacating an arbitration award is that in making the award, the arbitrator acted with "manifest disregard" for the law, the standard urged by Squibb. Notably, the Third Circuit, like the Fifth Circuit, nar-

*native* to litigation in this Court—has already been conducted. The issue before the Court is not whether Squibb breached the License; instead, it relates to whether the Panel exceeded its legal authority in granting the remedies included in the Final Award. The situs of negotiations for a contract for which a breach has already been adjudicated thus matters little to this proceeding.

The only transfer issue that causes this Court to pause is whether New Jersey law will be applied to the narrow legal issues before the Court. If it will, then Squibb argues, without citing any § 1404 case transferring an *arbitration* matter, that a New Jersey court, familiar with New Jersey law, is better equipped to wrestle with the issues presented by this matter.

The License provides that it "shall be construed in accordance with the laws of the United States, State of New Jersey," *and* "pursuant to the rules then prevailing of the American Arbitration Association." Squibb maintains that determination of its Motion to Vacate, Modify, or Correct the Award will require review of New Jersey law, and, in particular, its alleged aversion to the costs awarded.[25] Eastman disagrees, arguing that *federal* law controls the issues presented to this Court. It states that "Squibb's argument is misdirected, for the License Agreement does not dictate that the arbitrators shall render their decision *only* in conformity with New Jersey law. Rather, the Agreement provides merely that 'the Agreement shall be construed in accordance with the laws of the United States, State of New Jersey.' " (quoting Eastman App. at 69).

These arguments matter more to the confirmation, vacation, and/or modification issues than the transfer issue. However, a court's familiarity with the applicable law is a factor the Court may consider in conjunction with its § 1404 determination.[26]

rowly construes objections to arbitration awards:

> " 'Our Court of Appeals has made clear that the applicable standard of review of an arbitration award is 'fairness of the proceeding as a whole.' If the arbitration proceeding in its entirety was fair, the award will not be set aside because of incidental errors ... As expressed in the ["FAA,"] Congress intended to authorize the vacating of a contractual arbitration award only where the arbitration was proven to be a mockery or sham or to have been conducted illegally or by corrupt arbitrators.' "

*Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 598–99 (3d Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

**25.** Squibb contends that under New Jersey law, fees and costs cannot be awarded unless statutorily or contractually authorized.

**26.** The amount of weight the Court should give this factor—the Court's familiarity with the applicable law—is unclear. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct.

839, 91 L.Ed. 1055 (1947), the Supreme Court discussed the familiarity of the forum court with the applicable law as a "public interest" to be considered when determining whether a venue transfer is warranted. *See Illinois Union Ins. Co. v. Tri Core, Inc.,* 191 F.Supp.2d 794, 800–801 n. 18 (N.D.Tex.2002) (Lynn, J.). While cases within this Circuit generally fold this factor into the "other practical considerations" element, *see IDI, L.L.C. v. Fields,* No. 01–1623, 2001 WL 1577464 (N.D.Tex. December 7, 2001) (Fitzwater, J.), those within the Third Circuit weigh this factor more heavily. *See Weber v. Basic Comfort, Inc.,* 155 F.Supp.2d 283 (E.D.Pa.2001); *Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421 (D.N.J.2000). *See also Burbank Int'l, Ltd. v. Gulf Consolidated Int'l, Inc.,* 441 F.Supp. 819, 821 n. 3 (N.D.Tex.1977) (discussing the varying weights given to this factor). No case found within this jurisdiction transferred the case solely because of this familiarity with applicable law factor. Squibb's burden on the transfer issue is a relatively steep one given that the relative importance of this factor is not profound within this Circuit, and that the transfer request is made in relation to this limited proceeding.

The law applicable to this Court's review of the arbitration award will thus be briefly discussed.

In *High Voltage Engineering Corp. v. Pride Solvents & Chemical Co. of New Jersey, Inc.*,[27] a trial court judge in New Jersey confirmed the award of fees and costs by an arbitration panel. The respondent appealed, arguing that the arbitrators exceeded their authority in awarding counsel fees in contravention of New Jersey law, which law the contract specifically provided for construction of the contract under. The Superior Court of New Jersey upheld the confirmation of the award, finding that:

> [Respondent] misconstrues the contract language. It does not provide that the arbitrators 'shall render their decision only in accordance with New Jersey law ...' Rather, the [contract] provides only that the arbitrators, in resolving any controversy, 'shall interpret the provisions of this [contract] in accordance with New Jersey law[.]' Presumably, the arbitrators interpreted the contract in accordance with New Jersey law in determining that [respondent] had breached the [contract.] [Respondent] does not argue to the contrary before us. The arbitrators not only were required to determine whether there was a breach, but also what appropriate remedy should be given in order to make the party that was harmed ... whole as a result of the breach.[28]

Although the distinction between stating that "the *contract* will be construed in accordance with New Jersey law" and "the *arbitrators* shall render a decision in accordance with New Jersey law," may be appear tenuous, this opinion is cited to demonstrate a point. Even if the Court were to defer to New Jersey law, which it may decide to do on the parties substantive motions to confirm, vacate, or modify the award, New Jersey public policy is not as exacting as Squibb portrays it to be. When faced with a similar New Jersey construction clause, the *High Voltage* court confirmed that award of arbitration fees.[29]

In making the costs award, the Panel in this case relied on AAA Rule 45(b), which provides, in relevant part, that:

> In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines appropriate.

AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL DISPUTE RESOLUTION PROCEDURES, R45(a) (2000). The License specifically states that the Panel is to be governed by the AAA rules. While Eastman overstates the exclusivity of federal law, it is clear that, in addition to New Jersey law, AAA rules and FAA governance will surface. On the contract *construction* issues, the

---

**27.** 326 N.J.Super. 356, 741 A.2d 170, 175 (1999).

**28.** *Id.* at 363, 741 A.2d 170 (citations omitted) (emphasis added).

**29.** In *Commerce Bank, N.A. v. DiMaria Constr., Inc.*, 300 N.J.Super. 9, 692 A.2d 54, 59–60 (1997), the New Jersey court likewise confirmed an arbitration award that included counsel fees incurred in the arbitration proceeding despite an objection from the non-prevailing party that the arbitration panel had disregarded New Jersey law. In doing so, it stated that "a court should confirm an arbitration award even though the award is not based on the principles of law which would be applied in the courts of New Jersey or any other jurisdiction: 'The very purpose of committing a dispute to arbitration is to get away from the judiciary, to get away from the strictures and limitation of law....'" *Id.* at 59 (quoting *Perini v. Greate Bay Hotel & Casino, Inc.*, 129 N.J. 479, 610 A.2d 364, (1992)).

License clearly provided for the application of New Jersey law; however, the License is silent on the award of fees and costs, and specifically allows the Panel authority to work within the confines of AAA rules. .The Court will thus need to determine whether the Panel exceeded its available authority under the terms of the License, New Jersey law, federal law, and the AAA rules and guidelines.

## CONCLUSION

On the transfer issue, convenience of the parties—an issue not found in the case before the Court is the most important factor. Although the Court may encounter New Jersey law in deciding public policy issues related to its confirmation, vacation, or modification of the arbitration award, this factor does not justify a transfer of the case to New Jersey. The purpose of arbitration—to promote an inexpensive, expeditious alternative to litigation—would be undermined and litigation prolonged by a transfer, thus contravening the Supreme Court's clear dictate that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate like other contracts, in accordance with their terms." [30] Eastman's decision to seek to confirm the award in Texas will be respected and the transfer motion denied. Squibb has not met its burden for the Court to act otherwise.

**SO ORDERED.**

---

**30.** *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).