905 A.2d 887 (2006)
388 N.J. Super. 14
Michael S. KIMM, Plaintiff-Appellant,
v.
BLISSET, LLC, Defendant-Respondent, and
Roseanne Magliato, Nayda Magliato, Nayda's Salon, Inc. and On Set Transportation, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted October 18, 2005.
Decided August 28, 2006.
*889 Michael S. Kimm, appellant pro se.
Bonnist & Cutro, attorneys for respondent Blisset, LLC (James J. Cutro, on the brief).
Before Judges KESTIN, HOENS and R.B. COLEMAN.
The opinion of the court was delivered by
HOENS, J.A.D.
This appeal raises questions of first impression concerning the scope of an arbitrator's powers. In addition, the appeal calls upon us to draw distinctions among arbitrations involving fee disputes between attorneys and their clients, arbitrations conducted in court-annexed proceedings, and arbitrations undertaken pursuant to private agreements. Finally, this appeal calls upon us to analyze the meaning of the recently-enacted New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, as it relates to the powers of an arbitrator.
The facts that give rise to the issues before us, and the procedural history of this matter, are complex. Nevertheless, the precise issues that we are called upon to address cannot be understood except in the larger context of the factual and procedural history of the matter. We therefore set them forth at some length.
Plaintiff Michael S. Kimm is an attorney. He was retained in December 2001 to represent defendants Roseanne Magliato, On Set Transportation, Inc. ("On Set"), and Nayda's Salon, Inc. ("Nayda's"), in connection with a law suit which was then pending against them. At the same time, plaintiff also agreed to provide these clients with legal advice on general business matters. The written retainer agreement, dated December 13, 2001, included terms governing fees for plaintiff's professional services.
The retainer agreement also provided that, in the event of a dispute between plaintiff and his clients relating to the fees or the quality of his services, plaintiff would be entitled to a supplemental attorney's fee to compensate him for his time spent enforcing the terms of the fee agreement. In particular, Paragraph Three of the retainer agreement provided that plaintiff would be compensated at his usual hourly rate for all time that he expended in a fee dispute or in a collection action against his clients, together with any additional legal expenses or out-of-pocket costs that he might incur in that endeavor. Defendant Roseanne Magliato signed the agreement in her personal capacity as well as in her capacity as the principal of the two corporations, On Set and Nayda's.
Plaintiff performed services for these three clients until August 2002, at which time he terminated his relationship with them, contending that they were significantly indebted to him for past due legal fees. On August 16, 2002, plaintiff sent a pre-action letter as required by R. 1:20A-6. That letter was directed to Roseanne Magliato, who had signed the retainer agreement, as well as to Nayda Magliato.[1] *890 The letter informed them that legal fees in excess of $20,000 were then due from them for services rendered for them and on behalf of the two corporations, On Set and Nayda's. That letter advised them of their right to demand fee arbitration, see R. 1:20A-6, if they chose to dispute their outstanding obligation to plaintiff. The letter also reminded its recipients that if they sought to dispute the fees either by way of fee arbitration or through litigation, plaintiff would seek additional fees for such time as he might be required to devote to that matter, in accordance with Paragraph Three of the retainer agreement.
Because neither the individuals nor the corporate entities pursued their rights to fee arbitration, on September 17, 2002, plaintiff filed a complaint in the Law Division seeking to recover his unpaid legal fees. That complaint named as defendants Roseanne Magliato, Nayda Magliato, Nayda's, On Set and Blisset, LLC ("Blisset"). According to the complaint, Roseanne Magliato and Nayda Magliato were the owners of both On Set and Nayda's. The complaint also asserted that the two corporations had ceased operations and that Blisset was the corporate successor in interest to On Set. In addition, plaintiff asserted that Roseanne Magliato and Nayda Magliato were the principals of Blisset and that each of the business entities was an alter ego of the two individual defendants. Plaintiff's complaint sought to recover all of the outstanding fees from Roseanne Magliato and Nayda Magliato, jointly and severally, and from Blisset, on a successor liability theory.
The complaint included counts sounding in breach of contract, quantum meruit, and unjust enrichment and it also asserted a book account claim. In addition to $20,062.50 in outstanding fees demanded, the complaint further sought an award of any and all attorney's fees and costs that plaintiff might incur in prosecuting the litigation against defendants. Only defendants Blisset and Nayda Magliato[2] filed an answer to the complaint.
On May 14, 2003, the matter was referred for court-annexed non-binding contract arbitration.[3] Defendants assert, and plaintiff does not dispute, that during that proceeding, the arbitrator concluded that Nayda Magliato was not liable for any of the fees and that Blisset was liable only for fees in the amount of $750.[4] On June 9, 2003, plaintiff filed his demand for trial de novo, see R. 4:21A-6(b)(1), rejecting the award of the court-annexed arbitration proceeding. Plaintiff thereafter amended his complaint, asserting the same causes of action but restating the factual assertions supporting his alter ego theory to better support his demand for relief from the individual defendants. Once *891 again, only Blisset and Nayda Magliato filed an answer to the amended complaint.
On July 10, 2003, the parties appeared for a settlement conference before a Superior Court judge. It is undisputed that in the course of that conference the parties agreed to submit their differences to binding arbitration and agreed to the appointment of a retired judge of the Superior Court to act as their arbitrator. Apart from the oral agreement to submit the dispute to binding arbitration and their agreement to the appointment of the retired judge to serve as their arbitrator, the record does not reflect that they made any other agreement. That is to say, there was no agreement, either written or oral, at the time the matter was sent to binding arbitration, concerning the manner in which the arbitration would be conducted, the rules that would govern that proceeding, the scope of the issues to be resolved in the arbitration, or the powers that would be vested in the retired judge the parties picked to act as their arbitrator.
The parties appeared for the arbitration on December 3, 2003. Plaintiff insisted that the arbitration hearing be transcribed by a certified court reporter whom he had hired for the occasion. Defendants objected, insisting that it was inappropriate to conduct the proceeding on the record. In the end, the arbitrator permitted the court reporter to transcribe the proceedings, but advised the parties that because of defendants' objection, he would rely on his own notes and understanding of the issues and would not use a transcript in reaching his decision. With that caveat, defendants acquiesced and the arbitration proceedings were transcribed.
The existence of the transcript is significant to the issues before this court on appeal because the arbitration proceeding began without any discussion between counsel or among the parties concerning the arbitration, its scope, or its limitations. Apart from a statement on the record by counsel for defendants that he was only representing Nayda Magliato and Blisset, there was no other agreement set forth between counsel concerning their understanding of what matters would and would not be heard by the arbitrator; nor, for that matter, was there any reference to the rules that would govern the arbitration. There was, therefore, no agreement made between the parties that would vest the arbitrator with any particular authority.
The principal focus of the arbitration hearing was on the relationship between the signatories to the retainer agreement, namely, Roseanne Magliato, On Set and Nayda's, and the defendants, namely, Nayda Magliato and Blisset, who had answered the complaint and appeared at the arbitration. Because the only viable defendants were not parties to the retainer agreement, plaintiff could only secure an award against them if he could prove that they were legally responsible for the fees.
As a part of their defense, Nayda Magliato and Blisset argued that plaintiff's complaint against them for fees was frivolous and that they were entitled to an award of counsel fees pursuant to R. 1:4-8. Near the end of the arbitration proceeding, the arbitrator asked counsel for both parties to submit post-hearing written submissions on the issue of alter ego or successor liability as a means to hold Nayda Magliato and Blisset liable for fees when neither was a party to the original retainer agreement. In response, counsel for defendants explicitly reiterated the demand for frivolous litigation sanctions, which he had also set forth in an arbitration memo that had been submitted prior to the hearing.
In that context, the arbitrator told defendants' counsel that he was aware of the *892 demand for fees based on the frivolous litigation rule and that counsel could include that request in the post-hearing submission. In response, plaintiff commented that he believed that an application for fees would be required to be submitted "after an initial judgment." It is not clear whether plaintiff believed that the arbitrator would have the power to make an award of fees after he had issued an arbitration award or whether he believed instead that an application for fees could be addressed to a court in the context of confirming an arbitration award as a judgment. Equally unclear was the response from the arbitrator, who said: "Yeah, well, no, I understand that and if that became an issue where I was leaning in that manner, I would probably want your input. So I'll give you an opportunity to respond to that but let me resolve this item first."
The parties agreed to submit post-hearing briefs to the arbitrator for his consideration in addressing the issues that had been raised. Although the record does not include a copy of plaintiff's submission, defendants assert, and plaintiff does not deny, that plaintiff specifically requested that he be awarded both the legal fees that formed the basis for the complaint, together with "costs and fees incurred in bringing the action against Blisset, LLC and Nayda Magliato" as permitted by the retainer agreement. Likewise, in their post-hearing brief, defendants asserted that plaintiff's action against them was frivolous and that they were entitled to fees and costs pursuant to R. 1:4-8.
On February 4, 2004, the arbitrator issued his written decision and award. The arbitrator concluded that Blisset was, in fact, a successor to On Set and was therefore responsible for its unpaid legal fees, which the arbitrator fixed at $10,760 of the legal fees sought. The arbitrator concluded, however, that because Nayda Magliato had not executed the retainer agreement, she was not individually liable for any of the fees owed to plaintiff.
The February 4, 2004 award also addressed the demand by each party for attorney's fees. The arbitrator first rejected defendants' assertion that the complaint was frivolous and denied, therefore, the claim for attorney's fees pursuant to R. 1:4-8. Turning to plaintiff's affirmative demand for an award of fees and costs incurred in pursuing the collection action, the arbitrator concluded that, based upon his findings, such an award was not appropriate. Rather, he found: "it is better to follow the rule of law that provides: each litigant should be responsible for their own costs, expenses and attorneys' fees."
After receiving the written award and decision, on April 22, 2004, plaintiff filed a motion[5] with the arbitrator seeking "post-arbitration fees." In support of that application, plaintiff submitted a letter brief referring to the arbitrator's discussion of his attorney's fees application as "dictum" and arguing that the arbitrator had failed to address plaintiff's contract-based argument that he was entitled to these additional fees. He also submitted his certification of services seeking $16,575.10 in fees and disbursements related to his prosecution of the collection action. Defendants immediately objected to plaintiff's application in a letter to the arbitrator. Defendants contended that the motion or application was entirely inappropriate because *893 the arbitrator had already rendered his final, binding award and was therefore powerless to act.
On August 18, 2004, the arbitrator issued a "supplemental arbitration award." In that award, the arbitrator offered his "opinion" that although the original arbitration decision had concluded that each litigant would be responsible for its own fees, he was persuaded by plaintiff's suggestion that he had left open an opportunity to make a further application for an award in the event that he succeeded in securing an award on the merits. The arbitrator then discussed the case law relating to fee-shifting in general and he noted the terms of the original retainer agreement. Following that analysis, the arbitrator issued a "supplemental arbitration award" of $8,287.55 to plaintiff, representing one-half of the fees that had been requested in the post-arbitration motion.
On August 25, 2004, plaintiff filed a motion in the Law Division seeking to confirm both the February 4, 2004 award and the August 18, 2004 supplemental award. Defendants opposed that motion and filed a cross-motion to vacate the August 18, 2004 supplemental award. In support of their cross-motion, defendants contended that plaintiff had requested an award of fees incurred in prosecuting the action as a part of the original arbitration proceeding, that it had been rejected by the arbitrator in his February 4, 2004 award, that there had been no agreement between the parties that would permit the arbitrator to continue to act after issuing his February 4, 2004 award, that the arbitrator improperly relied on ex parte evidence forwarded by plaintiff, and that the arbitrator was without power to supplement his original award, making the August 18, 2004 award unenforceable. In particular, defendants asserted that only a court has the authority to grant post-award fee applications.
In reply, plaintiff argued that the supplemental award was permitted because the arbitrator had never properly considered plaintiff's original application for an award of fees. Moreover, he asserted that he had preserved his right to make the supplemental application during the first arbitration proceeding and that, therefore, the arbitrator was empowered to issue the supplemental award.
At a hearing before the Law Division judge on the motion and cross-motion, defendants conceded the validity of the February 4, 2004 award of the arbitrator, and that award was confirmed as a judgment. Turning to the dispute concerning the arbitrator's supplemental award, the Law Division judge concluded that the arbitrator lacked the authority to act once his original award had been issued. She therefore vacated the August 18, 2004 supplemental award, leaving plaintiff with a judgment only for the amount of the fees represented by the February 4, 2004 award. On appeal, plaintiff argues that the arbitrator had the authority, both as a matter of law and in accordance with the contract that formed the basis for the litigation, to award him the fees he sought and that the Law Division judge erred in concluding to the contrary. We disagree.
Although arbitration is traditionally described as a favored remedy, see, e.g., Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131, 773 A.2d 665 (2001); Faherty v. Faherty, 97 N.J. 99, 105, 477 A.2d 1257 (1984); Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 186, 430 A.2d 214 (1981), it is, at its heart, a creature of contract. See Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098, cert. denied, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003); Martindale v. Sandvik, *894 Inc., 173 N.J. 76, 84-85, 800 A.2d 872 (2002).
As our Supreme Court has recently reiterated in a discussion of the impact of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, on private agreements to arbitrate, "state contract-law-principles generally govern a determination whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342, 901 A.2d 381 (2006)(citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995)). As we have observed, "while liberally recognizing arbitration agreements, we have held that `it is equally true that the duty to arbitrate, and the scope of the arbitration, are dependent solely upon the parties' agreement.'" Singer v. Commodities Corp., 292 N.J.Super. 391, 402, 678 A.2d 1165 (App.Div.1996)(quoting Cohen v. Allstate Ins. Co., 231 N.J.Super. 97, 100-01, 555 A.2d 21 (App.Div.), certif. denied, 117 N.J. 87, 563 A.2d 846 (1989)).
In this context, the arbitrator's powers are limited by the agreement of the parties and an arbitrator may not exceed the scope of the powers granted to him or her by the parties. See High Voltage Engineering Corp. v. Pride Solvents & Chem. Co. of N.J., Inc., 326 N.J.Super. 356, 361-62, 741 A.2d 170 (App.Div.1999). It thus follows that, where only one of the parties believes that the arbitrator was empowered to act, in the absence of evidence of an actual agreement, there is no agreement and therefore the arbitrator has no authority to act at all. Indeed, in the absence of an express agreement by the parties about the scope of the arbitrator's duties, ordinarily the arbitrator is limited to resolving the dispute in question.
Significantly, without an agreement to the contrary, the power of the arbitrator is simply to issue an award that resolves a dispute. If they have not agreed in advance, the parties cannot, for example, force an arbitrator to give reasons for an award or to write a decision explaining his or her view of the facts. Neither can they appeal from the award as they could if they had proceeded to litigate their matter in court. Rather, the rights of the parties following issuance of an award, in the absence of an agreement to the contrary, are entirely governed by statute.
The traditional formulation of an arbitrator's powers is embodied in the common law doctrine of functus officio. As described by the United States Supreme Court, the doctrine provides that "[a]rbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an award to alter it; the authority conferred on them is then at an end." Bayne v. Morris, 68 U.S. (1 Wall.) 97, 99, 17 L.Ed. 495, 496 (1863). When "arbitrators have executed their award and declared their decision they are functus officio and have no power or authority to proceed further." Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 991 (3d Cir.1997)(citing Mercury Oil Refining Co. v. Oil Workers Int'l Union, 187 F.2d 980, 983 (10th Cir.1951)). An arbitrator's power, traditionally, is terminated immediately after making a final decision and is then at an end, regardless of the correctness of that decision. Matlack, supra, 118 F.3d at 991; Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1, 5, 176 A. 902 (E. & A.1935)(noting that authority terminates after making an award notwithstanding the invalidity of the award).
The functus officio doctrine was "applied strictly at common law to prevent an arbitrator from in any way revising, re-examining, or supplementing his award." Matlack, supra, 118 F.3d at 991 (citing *895 Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d 844, 846-47 (7th Cir.1995); Colonial Penn Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 331 (3d Cir.1991)). The policy underlying the doctrine of preventing an arbitrator from, in essence, reconsidering his decision is the "perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also. . . the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court." Office & Professional Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326 (3d Cir.1999); see also Matlack, supra, 118 F.3d at 991 (noting that "arbitrators, unlike judges, are not institutionally sheltered from `the potential evil of outside communication' and are thus particularly susceptible to various ex parte influences.").
There are three exceptions recognized at common law to the functus officio rule. These exceptions, in summary, permit an arbitrator to correct a mistake, generally of a clerical or computational nature, which is apparent on the face of his award, to "adjudicate an issue which has been submitted" but not decided, and as to which the agreement between the parties to arbitrate continues to authorize him to act, and to "clarify" an award "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, [such that] an ambiguity arises which the arbitrator is entitled to clarify." La Vale Plaza, Inc. v. R.S. Noonan, Inc., 378 F.2d 569, 573 (3d Cir.1967).
These three traditionally-recognized exceptions have been "narrowly drawn to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award." Matlack, supra, 118 F.3d at 992; Colonial Penn, supra, 943 F.2d at 332 (emphasizing need to prevent parties from attempting to persuade arbitrators "to overturn an adverse award").
In New Jersey, agreements to arbitrate made on or after January 1, 2003, are governed by the revised New Jersey Arbitration Act. N.J.S.A. 2A:23B-3a. Based largely on the Uniform Arbitration Act of 2000, see Assembly Judiciary Committee Statement on Senate Bill No. 514, L.2003 c. 95, and codified at N.J.S.A. 2A:23B-1 to -32, this statute replaces the earlier version of the Arbitration Act, see N.J.S.A. 2A:24-1 to -11, except that the prior statute continues to govern arbitration agreements in the collective bargaining context. See N.J.S.A. 2A:24-1.1. In light of the fact that the agreement to arbitrate this dispute necessarily was made on or after the date of the July 10, 2003 settlement conference during which the parties agreed to proceed with binding arbitration, it is governed by the provisions of the new statute.[6]
Certain of the provisions in the new statute are significant to our analysis. For example, the earlier statute, by its terms, governed a "written contract ... or a written agreement to submit ... any existing controversy to arbitration," N.J.S.A. 2A:24-1, whereas the revised statute requires only "a record," N.J.S.A. 2A:23B-3, *896 presumably one that might fall short of a formal, contractual writing. Although, as a practical matter, parties seeking to enforce awards through the prior statute's provisions were not required to prove the existence of a written agreement to arbitrate in order to do so, the new statute appears to have a broader applicability in this regard.
Other aspects of the new statute are similar to the provisions of its predecessor. As was true under the prior statute, in order to be enforceable, an arbitrator's award must be reduced to a judgment by a court, through the application of one of the parties to confirm the award. See N.J.S.A. 2A:23B-22; see also N.J.S.A. 2A:24-7. The statute also, however, empowers the court to vacate, modify or correct the arbitrator's award. N.J.S.A. 2A:23B-23, -24; see also N.J.S.A. 2A:24-8, -9. Even so, the current statute continues to grant a court only limited powers to do so.
The grounds now set forth in the statute on which a court may vacate an award, which are an expansion of the earlier statutory language, are as follows:
a. Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
(1) the award was procured by corruption, fraud, or other undue means;
(2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
(3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;
(4) an arbitrator exceeded the arbitrator's powers;
(5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or
(6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of this act so as to substantially prejudice the rights of a party to the arbitration proceeding.
[N.J.S.A. 2A:23B-23.]
Similarly, in terms reminiscent of the common law grounds for altering an award, the statute empowers the court to correct or to modify an award on the following grounds:
(1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
(2) the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or
(3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.
[N.J.S.A. 2A:23B-24a.]
Notwithstanding the apparently broad scope of the court's powers to alter an arbitrator's award as described in the statutory language, our courts have not traditionally interpreted the statutory language broadly. See, e.g., Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 355, 640 A.2d 788 (1994); High Voltage, *897 supra, 326 N.J.Super. at 362, 741 A.2d 170. Perhaps because arbitration is indeed a favored remedy, and perhaps because the essential purpose of arbitration is to offer a swift and efficient alternative to traditional litigation, courts have been relatively reluctant to interfere with arbitration awards and have understood their powers to do so as represented by the statutory language to be narrow.
Unlike the earlier version of our arbitration statute, which limited recourse following an award by requiring resort to a court, the revised Arbitration Act also gives an arbitrator the power to "modify or correct" an award. N.J.S.A. 2A:23B-20. The circumstances, and the scope of that authority, however, are strikingly similar to the grounds recognized at common law. The statute specifically limits that grant of authority as follows:
a. On application to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award:
(1) upon a ground stated in paragraph (1) or (3) of subsection a. of section 24 of this act;
(2) if the arbitrator has not made a final and definite award upon a claim submitted by the parties to the arbitration proceeding; or
(3) to clarify the award.
[N.J.S.A. 2A:23B-20.]
Paragraphs (1) and (3) of subsection a. of section 24 referred to in this section provide as follows:
(1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
. . . .
(3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.
[N.J.S.A. 2A:23B-24a.]
In summary, the statute now empowers the arbitrator to modify or correct his or her award for: (1) "evident mathematical miscalculation[s] or . . . mistake[s]"; (2) imperfection other than a matter of substance of the award; (3) failure to render a "final and definite award upon a claim submitted;" or (4) for clarification. N.J.S.A. 2A:23B-20, -24.
Certain aspects of this formulation, which are relevant to the issues on appeal, evidence a change from the prior statute's language. The earlier statute gave the court the authority to vacate an arbitrator's award if the arbitrator "so imperfectly executed [his] powers that a mutual, final and definite award" was not made. N.J.S.A. 2A:24-8; see Whitlock Packaging Corp. v. Precision Diversified Sys., Inc., 59 F.Supp.2d 384, 390-91 (D.N.J.1998). Regardless of what facts or circumstances might once have qualified to meet this standard, the revised act specifically excludes an attack on an award, either by way of application to the arbitrator or the court, see N.J.S.A. 2A:23B-24, on grounds of "imperfect[ion]" if the claim of imperfection is addressed to the merits of the award. Similarly, although the arbitrator's power to "clarify" an award is not specifically defined, nothing in the statute bespeaks an intention to authorize the arbitrator to change his or her mind or to reconsider his or her decision in the guise of clarification.
Moreover, although the revised statute therefore specifically grants the arbitrator certain authority to alter an award, it also sets forth strict time frames within which he or she may be asked to do so. The statute provides in relevant part: "b. An application pursuant to subsection a. of this section shall be made and notice given to all parties within 20 days after the aggrieved party receives notice of the *898 award." N.J.S.A. 2A:23B-20b. An application to modify or correct the award made after that time could, of course, be made to the court, provided the movant complies with the statutory time frames for doing so, see N.J.S.A. 2A:23B-24, but could not be addressed to the arbitrator.
It is in this context that we consider the issues raised on appeal. Contrary to plaintiff's apparent impression, these parties did not grant to the arbitrator any particular authority. The agreement to arbitrate here was an oral one and the only terms, it appears, were that the matters included in the litigation would be resolved by the arbitrator, that the award would be a binding one, and that a particular retired judge would serve as the arbitrator. In that context, as the record reflects, they presented their dispute to the arbitrator and he rendered his award. As the record also reflects, the arbitrator was aware when he did so that each of the parties was seeking an award of attorney's fees occasioned by the dispute itself. Defendants were asking for fees based on their assertion that the entire complaint was frivolous. Plaintiff was seeking an award of fees, in addition to the unpaid fees that were the focus of the litigation itself, because Paragraph Three in the retainer agreement permitted him to do so. In the February 2004 award, the arbitrator rejected defendants' counsel fee application because he had rejected their defense. In the same award, he addressed plaintiff's fee request by referring to the traditional American Rule.
On appeal, plaintiff argues that the retainer agreement gave the arbitrator the contractual right to award him the added fees he sought and therefore the retainer agreement gave the arbitrator the right to enter the supplemental award, which the court was obligated to enforce. More particularly, he regards the original fee agreement as the agreement to arbitrate and argues that it is this retainer agreement that binds the parties to arbitrate and sets the scope of the arbitrator's powers. In so asserting, plaintiff misperceives the relationship between the contract on which he sued and the agreement to arbitrate itself.
First, the original retainer agreement did not include an arbitration clause and, even if the eventual defendants to the litigation had actually signed the retainer agreement, that agreement did not require them to submit any dispute to arbitration. Rather, the only agreement to arbitrate was the oral agreement reached in July 2003. It is therefore only that agreement that can provide the arbitrator with the authority to act. Second, when the parties submitted their dispute to the arbitrator, the dispute included the question of the additional fees for enforcement of his contractual rights that plaintiff sought. This is so because the parties agreed that the issues raised would include plaintiff's entitlement to fees and plaintiff specifically requested that he be awarded the supplemental fee in his pre- and post-arbitration submissions to the arbitrator. Had the arbitrator included that sum as part of the February 2004 award, defendants would not be able to challenge it. By the same token, however, when the arbitrator issued his award and declined to include the added fees plaintiff had sought in the complaint and in his post-hearing submission, plaintiff did not have the power to challenge it, even if he believed that the arbitrator was mistaken.
To the extent that plaintiff's position on appeal is that the arbitrator erred by failing to appreciate that his fee request was a matter of contract rather than a counsel fee application under the rules of court, see R. 4:42-9, he cannot overturn the arbitrator's award. At most, the arbitrator made a mistake, either of law or of fact, but not *899 in the nature of one that plaintiff could alter. The reason for that is that once the arbitrator issued the award, his function was completed and, in the absence of an agreement by the parties or a basis for him to act identified in the new statute, his powers ceased.
The revised statute's grant of authority to an arbitrator to modify or correct an award does not yield a contrary result. Plaintiff's claim for a supplemental award does not fall into any of the categories allowed in the statute. That is to say, the application, on its face, sought a "supplemental" award. It did not call to the arbitrator's attention an "evident mathematical miscalculation or an evident mistake in ... description." N.J.S.A. 2A:23B-20, -24. It did not suggest imperfection in "form not affecting the merits." Ibid. It did not point out a failure to make "a final and definite award" and it did not seek a clarification of an ambiguity in the award. Ibid. Rather, it asked the arbitrator to conclude that he had erred in overlooking the effect of Paragraph Three of the retainer agreement and to remedy that error.
Nor is plaintiff correct in his assertion that he had "preserved his right" to seek a supplemental fee award by means of the comments he made at the end of the hearing. In the absence of an agreement between plaintiff and defendants, reached prior to the issuance of the award, that the arbitrator's authority would not end when that award was issued, but that he would be empowered to continue to act and to entertain a further application for fees, or to address any other matter, the arbitrator had no authority to act after February 2004 when his award was issued. Plaintiff did not have a right to seek further relief thereafter and did not have the power to "preserve" his right to seek an award of fees.
In the context of the arbitration proceeding, we do not interpret defendants' silence following plaintiff's statement about his intention to seek an award of fees "after the initial award" to constitute consent to continue the arbitration after the February 2004 award was entered. Similarly, the arbitrator's apparent belief that he would be authorized to resolve the contract dispute first and address the fee question thereafter cannot substitute for the agreement of the parties needed to vest him with that authority. In light of the fact that defendants never agreed that the arbitrator would have any continuing authority, plaintiff's unilateral application for further relief was, by definition, beyond the terms of the original agreement to arbitrate.
Even were we to conclude that defendants' silence, when the arbitrator suggested that he might decide the contractual issues first and might invite further input on the competing applications for a counsel fee award later, sufficed to grant him continuing authority, it would not alter the result here. Simply put, when the arbitrator issued the February 2004 award, it included a decision on the counsel fee applications submitted by both plaintiff and defendants. He therefore decided all of the issues in February. Even if the arbitrator thereafter concluded that he had made a mistake, his effort to alter or supplement his initial award was a legal nullity.
The language that the arbitrator used in the August 2004 correspondence concerning his reasons for issuing his supplemental award is illuminating. We discern in the August 2004 correspondence a belief on the part of the arbitrator that he had the authority to continue to act, just as a judge is empowered to alter or amend an order or to grant relief following a judgment. See, e.g., R. 4:49; R. 4:50. In light *900 of the fact that an arbitrator is limited in power and lacks the broader powers of a judge, however, this arbitrator's mistaken view cannot substitute for the agreement of the parties that is fundamental to an arbitrator's authority. Nor, for that matter, does the court's authority under some circumstances, to make a post-arbitration award of counsel fees pursuant to a fee-shifting statute, see Riding v. Towne Mills Craft Centre, Inc., 166 N.J. 222, 226, 764 A.2d 1004 (2001),[7] extend to the arbitrator. The powers of the arbitrator are simply not co-extensive with the authority of a judge to grant relief, unless the parties have agreed that they are.
Finally, even were we to conclude that plaintiff's post-award application fell within the statutory grant of authority to the arbitrator to modify or correct his award, plaintiff failed to comply with the stringent time constraints that the statute imposes. See N.J.S.A. 2A:23B-20b. We discern no ground, either in the statute or in the record, on which to relax the twenty-day filing deadline.
Our review of the record compels us to conclude that the parties agreed to submit their dispute to binding arbitration, that the dispute included plaintiff's contractual demand for an award of fees incurred in enforcing his right to the unpaid legal fees, that the arbitrator declined to include that element of relief in his award, and that immediately upon issuing his award, the arbitrator's powers to act ceased. We further conclude that once the arbitrator's powers ceased, plaintiff's only rights to seek to alter the award, in the event that he chose to do so, were those granted pursuant to the statute. We finally conclude that, had plaintiff challenged the award of the arbitrator because of its rejection of the application for fees incurred in pursuing the litigation, he could not have succeeded, because that challenge would have been to the merits of the award.
We therefore affirm the decision of the Law Division judge to the extent that it confirmed and entered as a judgment the award as embodied in the February 4, 2004 arbitrator's award and to the extent that it vacated and declared a nullity the August 18, 2004 supplemental award.
Affirmed.
NOTES
[1] The record is sparse as to the manner in which plaintiff believes that Nayda Magliato became indebted to him or responsible for any of the legal fees.
[2] The record reflects that Roseanne Magliato has been discharged in bankruptcy. Although the date when this occurred is not revealed in the record, plaintiff concedes that his claim against her was discharged in that proceeding.
[3] Defendant asserts that the referral of the dispute to court-annexed arbitration, presumably pursuant to R. 1:40-9, occurred as part of an unsuccessful settlement conference, although the record does not make clear the manner in which the referral was made. This referral to arbitration, however, was apparently not automatic and was not part of any pilot program. See R. 4:21A-1(a)(3).
[4] The record does not include a copy of an arbitrator's award as would ordinarily be generated at the close of court-annexed non-binding arbitration, but because plaintiff does not dispute this assertion, we presume it to be true.
[5] The record includes a copy of papers described as a motion, bearing the Law Division caption, and advising that plaintiff will seek relief before the arbitrator. Although we cannot definitely discern from the record whether plaintiff filed his motion in the Law Division or merely utilized that format for his application to the arbitrator, it appears that the latter is an accurate assessment of what occurred.
[6] We recognize that both parties presumed that the language of the prior statute governed their issues on appeal but we must, of course, apply the correct statute. We further recognize the preemptive scope of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, but need not consider that Act as no conflict exists in this case between these statutes.
[7] We have held that not all applications to a court following an arbitration award are cognizable under the Riding doctrine. For example, we have concluded that agreements to proceed to binding arbitration in place of trial do not support an application for awards of prejudgment interest. See Elliott-Marine v. Campenella, 351 N.J.Super. 135, 143, 797 A.2d 201 (App.Div.), certif. denied, 174 N.J. 365, 807 A.2d 196 (2002)(distinguishing Riding, supra, where arbitration was court-annexed).