**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2516-23

VALLEY PLAZA REALTY,
HIGHVIEW PROPERTIES III,
FRANK GREEK AND SON, INC.,
HIGHVIEW PROPERTIES I, and
TICES PROPERTIES, on behalf of
themselves and all others similarly
situated,

     Plaintiffs-Respondents,

v.

VERIZON NEW JERSEY INC.,
formerly known as BELL ATLANTIC
NEW JERSEY, INC., and NYNEX
LONG DISTANCE COMPANY,
d/b/a VERIZON ENTERPRISE
SOLUTIONS,

     Defendants-Respondents.

_____

CARL J. MAYER, ESQ. and THE
MAYER LAW GROUP, LLC,

     Appellants.

_____

Argued October 23, 2025 – Decided November 5, 2025

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0817-15.

Michael W. Sabo argued the cause for appellants (Fox Rothschild, LLP; Jeffrey M. Pollock, Michael W. Sabo, and R. James Kravitz, of counsel and on the briefs).

Jerome M. Marcus (Marcus & Marcus, LLC) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondents Jerome M. Marcus, Jonathan Auerbach, Marcus & Marcus, LLC and Resolution Strategy Group, LLC (Linda Sinuk and Jerome M. Marcus, attorneys; Linda Sinuk and Jerome M. Marcus, on the brief).

PER CURIAM

Appellants Carl J. Mayer, Esq. and Mayer Law Group appeal from a March 21, 2024 order, which compelled arbitration of a fee dispute with respondents Jerome M. Marcus; Jonathan Auerbach; Marcus & Marcus, LLC; and Resolution Strategy Group, LLC. They also challenge an April 12, 2024 order, which subsequently confirmed the arbitrator's fee decision. We affirm.

This dispute originates from a nearly sixteen-year-long class action litigation against Verizon, in which appellants and respondents (the parties) served as counsel for the class action plaintiffs. The initial complaint against Verizon, Frank Greek & Sons, Inc. v. Verizon, was filed in February 2009 and

2

later subsumed by a class action suit brought in 2015, with Valley Plaza Realty as the lead plaintiff. Another facet of the litigation against Verizon was the "Municipal E911 Litigation," a case brought on behalf of government entities alleging improper charges related to 9-1-1 calls.

For several years, the parties worked together without a fee agreement. On January 23, 2012, they entered an Affiliation Agreement. The agreement provided for fee sharing, governing "the division of any attorney's fees" awarded in the class action suit and related litigation as follows: appellants, thirty-five percent; and respondents, sixty-five percent. Expenses for experts and other outside contractors would also be borne by the parties in the same proportions. The agreement stipulated "[a]ny disputes under this agreement will be arbitrated."

Settlement discussions for the class action suit began in 2018. Following mediation, the case was settled in late 2020. However, a dispute arose between the parties regarding the amount of attorney's fees they would seek from the class action settlement. The parties each retained counsel and entered mediation with a retired federal judge on July 13, 2021.

On August 5, 2021, the parties entered a Dispute Resolution Agreement (DRA). This agreement states it "governs and provides for the resolution of all

A-2516-23

disputes between" the parties relating to "[a]ny issue governed by the Affiliation Agreement" and "the attorney's fees and expenses to be paid by Verizon in settlement of" the class action suits. The DRA also governs "[t]he process by which [the parties] will determine the position taken by [p]laintiff[s'] counsel . . . on the attorney's fees and expenses to be paid by Verizon . . . and the substantive terms[,] which [the parties] will agree to accept in resolution and settlement of the fees and expenses . . . ."

Under the DRA, the parties agreed to first mediate their dispute and, if the mediation failed, to have the mediator serve as arbitrator to decide the dispute. The parties agreed the arbitrator "retain[ed] the authority to resolve any subsequent dispute and, if necessary, to fashion an enforceable award." He was given "sole power to determine the manner in which the mediation is conducted and the [d]ispute resolved." The parties authorized the arbitrator to decide all issues related to the "[p]roposals to be made to Verizon regarding attorney's fees and expenses [that] will be negotiated by the parties . . . including what fee arrangement, and the amount of fees, to accept." His "determination on all such issues will be final and binding on both sides."

The mediation occurred on August 10 and 11, 2021, but was unsuccessful. On August 11, 2021, the arbitrator decided respondents would receive sixty

4

percent of the fees recovered from Verizon from the first eight million dollars in net counsel fees, and appellants would receive forty percent. Net counsel fees were defined as "those fees recovered after the payment of all costs and expert witness fees." The arbitrator ruled any net counsel fees recovered greater than eight million dollars would be divided as follows: respondents, fifty-eight percent; and appellants, forty-two percent.

On August 9, 2022, appellants filed a complaint and order to show cause in the Law Division disputing the fee decision and challenging the dual role of the mediator as arbitrator. The trial judge heard the matter on August 16, 2022. She found no evidence of wrongdoing in either the mediation or arbitration. The judge observed appellants "suggested and implored the parties to utilize [the retired judge] as a mediator in this case." Appellants' order to show cause failed because they did not demonstrate irreparable harm. The judge found "[t]he only irreparable harm here . . . would be to [t]he [c]lass in not moving forward with the mediation . . . as agreed to by counsel . . . ." Appellants lacked a settled right to "enjoin further mediation with . . . the mediator."

On January 4, 2023, the mediator emailed the parties to inquire whether they would accept Verizon's settlement offer. If the parties could not agree, he would arbitrate the issue pursuant to the DRA. He gave the parties until January

10, 2023, to respond. On January 10, respondents emailed the mediator, advising they would "accept Verizon's . . . settlement offer subject to adjustments, to be made by [the mediator] pursuant to the [DRA]." Appellants did not reply to the mediator's message. The mediator directed the parties to submit their positions regarding the settlement for arbitration by him. Respondents complied with his instructions, but appellants did not.

The arbitrator issued a decision on January 18, 2023. He recounted how appellants failed to participate in the mediation, despite several emails notifying them it was occurring. As a result, appellants had defaulted under the DRA and waived the right to object to the arbitration award. The arbitrator ordered respondents would "be solely responsible for negotiating the remainder of the" settlement with Verizon, and "solely responsible for all briefing on [the p]reliminary and [f]inal [a]pproval [of the class action settlement] and any challenge to the settlement, and . . . solely responsible for all attorney work to be done in connection with settlement administration."[1]

The arbitrator also noted the DRA empowered him "to decide any issue relating to the Affiliation Agreement." He ruled appellants would be solely

---

[1] This ruling was later memorialized in an order entered by the trial judge granting preliminary approval of the class action settlement on June 27, 2023.

6

responsible for and entitled to the fee awarded with the prosecution of the E911 litigation. Since respondents took on the settlement of the Verizon case, the arbitrator adjusted appellants' entitlement to the net counsel fees to thirty percent. He noted the adjustment was also "based upon the limited role [appellants] actually played in the . . . Verizon case." Indeed, appellants "initially did not serve as local counsel. [A different attorney] was retained for that purpose. When she could no longer serve[, appellants] turned over the task of local counsel to [respondents], who filed pleadings for [appellants] under [appellants'] New Jersey login."

The arbitrator also found appellants were "disruptive and uncooperative during the almost three years of mediation. [They were] frequently difficult to reach and unresponsive, or late in providing information necessary to negotiate with Verizon." Appellants "essentially dropped out of sight for the last few months, which . . . triggered the application of the arbitration provisions of the [DRA]." Their "conduct or . . . inactions . . . prejudiced the class and delayed unnecessarily the meaningful class relief."

On October 10, 2023, the trial judge held a hearing on final approval of the class settlement. The only objectors were appellants. They claimed the arbitrator issued contradictory rulings regarding the parties' respective share of

the counsel fees. Moreover, appellants were entitled to a greater share than the arbitrator found because they acted as local counsel and found experts for the case against Verizon.

Appellants alleged respondents had committed fraud because they misrepresented the role appellants would play and breached the Affiliation Agreement by taking over the case and the settlement discussions. Respondents purportedly made false statements about appellants' role and conduct in the case, which unduly influenced the arbitrator's decision. Appellants also asserted there were ex parte communications during mediation between respondents and the mediator, and the arbitration proceeding was unfair because only one party appeared. When the trial judge advised she would not consider the fraud claim, appellants claimed she was depriving them of their constitutional rights, including the right to due process.

The trial judge rejected appellants' arguments. She noted they did not raise their arguments when she issued the order granting preliminary approval of the class action settlement. These arguments, particularly the one alleging fraud, were not raised in a timely manner. Regardless, there was nothing in the record "remotely sounding in fraud in terms of [a] breach." Additionally, the Affiliation Agreement mandated arbitration in the event of a dispute over the

A-2516-23

fees. Jurisdiction over this issue belonged to the arbitrator and appellants failed to participate in the proceedings before him.

On October 20, 2023, the trial judge entered a final order approving the class action settlement and dismissed the case with prejudice. The judge found class counsel were entitled to fees because their efforts yielded the settlement, and both the fees charged and the lodestar were reasonable. The order "expressly affirm[ed] the arbitrator's jurisdiction to make all determinations regarding any issue or dispute arising under counsel's fee agreement." Appellants moved for reconsideration.

On November 14, 2023, the parties entered a stipulation agreement in which appellants agreed to withdraw the reconsideration motion and waive their "right to . . . appeal or otherwise further object to or move to reconsider the . . . October 20, 2023 [order], or any of the [c]ourt's rulings at the October 10, 2023 [f]inal [a]pproval [h]earing." In exchange, the parties agreed respondents would pay $16,000 from their portion of the settlement fees to an expert appellants hired in the class action matter.

On December 29, 2023, respondents sent appellants a letter requesting appellants reimburse them for expenses respondents incurred because of appellants' breach of the Affiliation Agreement. The evidence of appellants'

breach included "working against the interests of the clients" and "delaying by years the effective date of the settlement reached in the case in November of 2020." These actions forced respondents to incur unnecessary expenses relating to: mediation of the counsel fees; retaining outside counsel to represent respondents in the mediation and appellants' orders to show cause; the hours respondents expended addressing the mediation and litigation initiated by appellants; and the twenty-eight-month delay in respondents' receipt of counsel fees. Respondents requested a reimbursement of $368,615.08. Appellants did not reply to the letter.

Appellants filed another order to show cause on January 1, 2024, to enforce the October 20, 2023 order and "distribute immediately [the] settlement funds to the class, class representatives, experts[,] and attorneys." Respondents opposed the motion because jurisdiction over the counsel fee dispute belonged to the arbitrator. The judge agreed and denied the order to show cause on January 2, 2024.

On January 16, 2024, respondents wrote to the arbitrator about their request for reimbursement of the counsel fees raised in their December 2023 letter to appellants. In response, the arbitrator stated he would treat respondents' letter as a demand for arbitration under the DRA. The arbitrator instructed

respondents to direct the class action settlement administrator to place the disputed sum in escrow.

On March 20, 2024, the arbitrator issued a written arbitration decision. He noted appellants did not answer respondents' December 2023 letter, despite granting them two adjournments. Therefore, he considered the failure to respond to be a default.

The arbitrator found he had jurisdiction to decide the dispute pursuant to the DRA. The parties had negotiated the DRA at arm's length and were represented by sophisticated attorneys. The DRA's language "itself provides that it encompasses any issue governed by the Affiliation Agreement," including the fee in the class action "and any litigation regarding any E911 fee" and gave the arbitrator sole authority to resolve the fee dispute.

The arbitrator found "it became virtually impossible to negotiate a settlement with Verizon" because appellants made "unreasonable settlement demands." Appellants' conduct forced him to conduct "a mediation within a mediation," namely, a mediation with Verizon and mediation of the counsel fee dispute between the parties. The latter mediation required respondents to retain separate counsel and incur substantial attorney's fees. The arbitrator held

appellants responsible for respondents' outside counsel fees because appellants had "unreasonable positions and settlement tactics."

The arbitrator next addressed the August 2022 complaint and order to show cause appellants filed to set aside arbitration and the DRA, and to disqualify him. He concluded "[t]here was no basis in fact or law for the . . . [o]rder to [s]how [c]ause" and respondents should be reimbursed the fees they spent to defend it.

The arbitrator also awarded respondents counsel fees for appellants' role in delaying the receipt of attorney's fees following settlement of the class action in November 2020 by twenty-eight months. He found the delay was caused by appellants' "dilatory tactics, stubborn intransigence to negotiate in good faith with his co-counsel and counsel for Verizon," which caused "the case [to] languish[] without any meaningful effort by [appellants] to negotiate a settlement." Even after the trial judge granted preliminary approval of the settlement, appellants "delayed the settlement another two month[s], by filing a frivolous objection to the proposed settlement." Indeed, "[f]rom the outset of the mediation . . . in mid-March 2020," appellants took "frivolous and meritless settlement and legal positions at every stage of the process. [Appellants'] settlement positions and legal arguments [were] irrational from start to finish."

12

The arbitrator also reassigned responsibility for the E911 claim to respondents. He had "serious reservations about whether [appellants were] capable of investigating and prosecuting . . . a complex class action." They delayed the Verizon settlement, "advanced frivolous litigation and settlement strategies at each stage of the mediation," were "difficult to reach, did not return phone calls or respond to emails in a timely fashion," "insisted on demanding an inflated, unreasonable lodestar from Verizon," and were "often angry and intransigent." The arbitrator concluded it was in the best interests of the potential E911 class for respondents to handle the case. However, he still awarded appellants twenty-five percent of the counsel fees recovered from the E911 litigation.

On March 21, 2024, the trial judge entered an order denying appellants' January 24, 2024 motion to enforce the November 2023 order. She reiterated she lacked jurisdiction pursuant to the DRA. Pointing to the October 20 and November 14 orders, she noted this was the third time appellants asked her to "decide disputes that counsel all agreed in writing would be decided by [the mediator]." The judge directed appellants to cease filing motions for the same relief and "comply with the referenced agreements and [o]rder of the court by returning to mediation."

13

On March 22, 2024, respondents moved to confirm the March 20 arbitration award. The trial judge granted the motion on April 12, 2024.

I.

On appeal, appellants argue the March 22, 2024 order confirming the March 20 arbitration award must be vacated because the arbitrator was functus officio at the time he issued the award. In other words, the arbitrator could no longer arbitrate after he issued the final arbitration award on January 18, 2023. Appellants assert they should receive the entire fee for the E911 litigation.

Appellants claim the arbitrator unlawfully altered the final arbitration award. They point out he previously rejected respondents' request to adjust the counsel fee allocation related to the fees respondents incurred answering the order to show cause heard by the trial judge in 2022, because he had no jurisdiction under the DRA to make an adjustment yet reversed himself and awarded counsel fees in the March 2024 ruling. Appellants argue the trial judge's order confirming the March 2024 arbitration award was erroneous because respondents were time barred from seeking modification or correction of the final award by N.J.S.A. 2A:23B-20(b).

Appellants also assert the trial judge erred when she concluded she lacked jurisdiction to adjudicate the fee request for the expert appellants retained

because the arbitrator conceded he did not have jurisdiction to hear the issue. According to appellants, respondents never paid the expert the $16,000 from their portion of the settlement fees, and the arbitrator failed to enforce their obligation to do so.

## II.

The scope of review of an arbitration award is narrow. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). To "promot[e] a sense of finality, there is a 'strong preference for judicial confirmation of arbitration awards.'" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010) (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

"A party seeking to vacate an arbitration award must first obtain trial court review of the award." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). Because "the decision to vacate an arbitration award is a decision of law, [we] review[] the denial of a motion to vacate an arbitration award de novo." Ibid.

## A.

Under the common law, an arbitrator's powers are embodied in the functus officio doctrine. Kimm v. Blisset, LLC, 388 N.J. Super. 14, 26 (App. Div.

15

2006).  "[T]he doctrine provides that '[a]rbitrators exhaust their power when they make a final determination on the matters submitted to them.  They have no power after having made an award to alter it; the authority conferred on them is then at an end.'"  Ibid. (second alteration in original) (quoting Bayne v. Morris, 68 U.S. (1 Wall.) 97, 99 (1863)).

The doctrine has been applied to "prevent an arbitrator from in any way revising, re-examining, or supplementing [their] award."  Ibid. (quoting Teamsters Loc. 312 v. Matlack, Inc., 118 F.3d 985, 991 (3d Cir. 1997)).  The principle underlying the doctrine is that arbitrators lack the institutional protection of judges and thus may be more susceptible to outside influences pressuring them for a different outcome.  Id. at 27.  However, the doctrine does not apply where the arbitrator seeks to:  (1) correct a mistake, (2) adjudicate an issue which has been submitted but not decided, and as to which the agreement between the parties to arbitrate continues to authorize them to act, or (3) clarify an award.  Ibid.

The second exception applied here.  The Affiliation Agreement gave the arbitrator ongoing authority to decide the counsel fee issue because it governed the division of any counsel fees awarded in the class action cases, including the

E911 case. The DRA also empowered the arbitrator to resolve all disputes between the parties.

We also reject appellants' assertion the arbitrator contradicted himself by adjudicating the reallocation of the E911 dispute. The scope of an arbitrator's powers is confined to the parties' arbitration agreement. Kimm, 388 N.J. Super. at 25. Where "there is no agreement . . . the arbitrator has no authority to act at all." Ibid. The DRA clearly permitted the arbitrator to address the E911 dispute because they stipulated it "governs and provides for the resolution of all disputes between" them. Therefore, the arbitrator could hear and adjudicate respondents' request for modification of the counsel fee allocation.

The fee allocation was necessarily tied to deciding which party would be entitled to prosecute the E911 case. If it did not, it would be unjust to modify the allocation. Therefore, the allocation issue necessarily followed from the decision about who would conduct the litigation. As we recounted, the arbitrator made more than ample findings explaining why appellants could not have this responsibility. Appellants' delay of the settlement, failure to respond to the arbitrator's requests, and overall recalcitrance is well-supported by the record. The arbitrator did not contradict his own rulings. Rather, it was appellants'

intransigence, which caused a change in circumstances and raised yet another dispute over counsel fees requiring a resolution.

It follows from our discussion the trial judge did not err when she entered the order confirming the March 20, 2024 award. A party may file a summary action to confirm an arbitration award. Pami Realty, LLC v. Locations XIX Inc., 468 N.J. Super. 546, 556-57 (App. Div. 2021); see also N.J.S.A. 2A:23B-22. A court may vacate an arbitration award only for very limited purposes. Pami Realty, LLC, 468 N.J. Super. at 557. The circumstances under which a court may vacate an award are set forth in N.J.S.A. 2A:23B-23(a)(1)-(6). None of them applied here and the arguments appellants advance to the contrary lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

B.

We reject the argument respondents were not entitled to relief because they did not seek to modify or correct the final arbitration award within twenty days, as required by N.J.S.A. 2A:23B-20(b). This argument mischaracterizes the record. When respondents contacted the arbitrator in January 2024 after appellants ignored their December 2023 letter demand for reimbursement of counsel fees, they were not seeking to modify or correct a final arbitration award

but rather seeking arbitration of a new dispute created by appellants' misconduct. Therefore, the time limitations in N.J.S.A. 2A:23B-20(b) did not apply.

C.

Appellants also mischaracterize the trial judge's refusal to adjudicate appellants' expert's fees. On September 9, 2023, the arbitrator initially told the parties he lacked jurisdiction to address the issue because the trial judge had scheduled a fairness hearing for October 10, 2023. He expressed reluctance to decide the issue because appellants had placed it before the trial judge. As a result, the arbitrator observed respondents were free to raise the jurisdiction issue before the trial judge. Respondents followed suit and raised the issue at the October 10 hearing. The judge concluded the issue should be adjudicated by the arbitrator.

We discern no reversible error. The expert fee dispute clearly fell within the ambit of the Affiliation Agreement, the DRA, and the arbitrator's jurisdiction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19

A-2516-23