# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2160-22

S.I.,[1]

    Plaintiff-Appellant,

v.

M.I.,

    Defendant-Respondent.

_____

> Argued March 5, 2024 – Decided March 22, 2024
>
> Before Judges Smith and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0735-17.
>
> Ira Treuhaft argued the cause for appellant (Treuhaft & Zakarin, LLP, Boaz I. Cohen (Kramer Levin Naftalis & Frankel LLP), Jonathan M. Wagner (Kramer Levin Naftalis & Frankel LLP) of the New York bar, admitted pro hac vice, and Daria Schieferstein (Kramer Levin Naftalis & Frankel LLP) of the New York bar, admitted pro hac vice, attorneys; Ira Treuhaft, Boaz I. Cohen,

---

[1] We use initials to protect the privacy of the parties.

Jonathan M. Wagner, and Daria Schieferstein, on the briefs).

M.I., respondent, argued the cause pro se.

PER CURIAM

Plaintiff S.I. appeals from the February 17, 2023 Family Part order denying her motion to confirm an arbitration award entered after attending binding arbitration pursuant to the parties' memorandum of understanding (MOU). The arbitration award required defendant M.I. to provide plaintiff a get.[2] Having reviewed the record, the parties' contentions, and the applicable law, we reverse and remand.

## I.

The parties were married in December 1984 and share eight children. After almost twenty years together, the parties separated. Plaintiff thereafter sought a divorce from defendant. On May 21, 2019, on the eve of trial and after extensive negotiations, the parties appeared before the trial judge advising they had settled their marital issues and entered into an MOU. The parties agreed to a divorce from bed and board, in addition to resolving custody, child support,

---

[2] A "get" is a written document, "which is a religious divorce granted by a husband to a wife." Abdelhak v. Jewish Press Inc., 411 N.J. Super. 211, 218 (App. Div. 2009). "Unless granted a [g]et, an observant Orthodox Jewish woman is not free to marry again" under Jewish law. Ibid.

2

alimony, and equitable distribution issues. The MOU also specifically addressed plaintiff's request for a get; provision thirteen stated the parties "both . . . agreed" to attend a "[b]eit [d]in"[3] and "both will cooperate." The parties' attendance at a beit din provided plaintiff the opportunity under Jewish rabbinical law to obtain a get from defendant permitting her to remarry.

Before the judge, the parties placed the terms of the MOU on the record and were extensively questioned by counsel confirming their understanding and agreement. The following colloquy regarding the get occurred between defendant and his counsel:

> DEFENSE COUNSEL: Both parties agree that they will . . . appear before . . . a beit din . . . and that's on the issue of the get[]. First they will try Rabbi Herbst . . . and if he accepts the parties into his jurisdiction and his beit din, that's great.
>
> If he refuses, they're going to ask him for a recommendation as to another beit din and if he does not give them a recommendation for another beit din, then I will contact Rabbi Baldamelski . . . down in Crown Heights and get the name of a beit din for both to appear before and both will cooperate to appear before that beit din.
>
> . . . .

---

[3] A "beit din," also known as beth din or bais din, "is a rabbinical court composed of a minimum of three rabbis." Abdelhak, 411 N.J. Super. at 219 n.2.

DEFENSE COUNSEL: Do you believe that under the circumstances, [the MOU is] a fair and reasonable agreement?

DEFENDANT: Yes I do.

DEFENSE COUNSEL: Do you understand what was agreed to?

DEFENDANT: Yes I do.

DEFENSE COUNSEL: Have I been able to answer all your questions about it?

DEFENDANT: Yes you have.

DEFENSE COUNSEL: Did anyone force you to -- you actually signed this, correct, that's your signature on --

DEFENDANT: Right there.

. . . .

DEFENSE COUNSEL: [The MOU] [e]ven includes items like the beit din --

DEFENDANT: Correct.

DEFENSE COUNSEL: . . . and the [get].

DEFENDANT: Correct.

Defendant confirmed his highest level of education was an LL.M. On June 4, 2019, the judge granted the parties a divorce from bed and board incorporating their handwritten MOU.

After the parties began the arbitration process, in a letter dated December 3, 2019, Rabbi Herbst advised that he was "unable to do anything" and would not see the parties "until [defendant] g[ave] . . . [the parties' daughter] to a group home." The parties did not return to complete the get arbitration with Rabbi Herbst.[4]

Plaintiff moved to compel defendant to attend arbitration in accordance with the MOU, which was granted. Defendant had previously signed an arbitration agreement with Rabbi Duvid Twersky on April 26, 2021, and plaintiff thereafter signed on December 29 while the motion was pending. On January 3, 2022, after argument, a different judge ordered that the parties attend arbitration with Rabbi Twersky, "sign the standard arbitration agreement," and abide by Rabbi Twersky's ruling. Defendant did not appeal the judge's order enforcing the parties' agreement to attend binding arbitration.

Thereafter, in his January 25, 2022 email to plaintiff's counsel, defendant confirmed he had "already signed" the arbitration agreement with Rabbi Twersky. Defendant asserted he always "accepted [Rabbi Twersky], his bei[t] din and his protocol. [Plaintiff] had refused to accept him, his bei[t] din and his protocol for [two] years." The parties' signed "AGREEMENT TO SUBMIT TO

---

[4] The parties acknowledged at argument that Rabbi Herbst had passed away.

A-2160-22

ARBITRATION" provided they "agree[d] to submit to binding arbitration . . . [to] be conducted under the auspices of Rabbi . . . Twersky" who could "decide if he s[aw] fit at any time to arrange for a [beit din] of three [r]abbis of his choice to adjudicate the controversies." Further, the agreement provided the arbitration shall "commence" and "continue until a final award is made."

On August 22, 2022, after multiple sessions with the parties, Rabbi Twersky issued his arbitration decision directing defendant to provide plaintiff a get. The written decision provided:

> [T]hey signed an arbitration agreement to litigate before me. They also accepted my authority to deal with their marital harmony. I held ten sessions with them, of one hour each, for a total of ten hours, and after hearing their words and examining the nature of relations between them from all the angles I see no opportunity for blessing to come to them, and I am therefore forced to express my opinion that as far as I can see it is clear that there is no prospect of restoring peace between them and it is not at all possible for them to live together. In order to preserve and spare their dignity I shall not go into details here . . . at any rate it is an argument in favor of a finding that in such circumstances they have a duty to divorce.
>
> . . . [T]he aforementioned legal authorities are of the opinion that the parties must divorce each other, and especially in the current case, where according to these authorities the husband is required to divorce his wife.

6

. . . .

> . . . I have also presented the content of the matter last night before the world-renowned genius Rabbi Menachem Mendel haCohen Shafran and he approved it, and even said that you may be told in his name that you should certainly present your opinion and conclusions before the [civil court] judge. To which I affix my signature on Monday Menachem-Av 25, 5782 [Aug-22-2022] [signature] Rabbi Tzvi Gertner

After receiving the ruling, however, defendant refused to provide plaintiff the get.

On November 4, 2022, plaintiff moved to confirm the arbitration award. Defendant cross-moved to vacate the award. On February 17, 2023, the judge denied the motions, finding the court lacked "jurisdiction to confirm an award which would in effect order somebody to give a get—a religious divorce in the Jewish faith." He reasoned "the effect of that confirmation [would] . . . put the State of New Jersey Superior Court['s] stamp on an arbitration award telling one person they have to do something that . . . in their religion that is really beyond." Further, the judge found no precedent "would compel [him] . . . to order anyone of the Jewish faith to give another person of the Jewish faith a get."

On appeal, plaintiff contends the judge erroneously denied confirmation of the arbitration award because: the parties have a binding arbitration

7

agreement; and Rabbi Twersky's award granting her a get did not violate either the Establishment or Free Exercise Clauses of the First Amendment.

II.

"We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Our scope of review of Family Part orders is limited. Cesare, 154 N.J. at 411. We reverse "only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

We review de novo questions of law. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). The "[i]nterpretation and construction of a contract is a matter of law." Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021) (alteration in original) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). Thus, the enforceability of an

arbitration agreement is reviewed de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); Perez v. Sky Zone LLC, 472 N.J. Super. 240, 247 (App. Div. 2022).

It is well-established that settlement of "matrimonial disputes[] is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). "The prominence and weight we accord such [settlements] reflect the importance attached to individual autonomy and freedom, enabling parties to order their personal lives consistently with their post-marital responsibilities." Weishaus v. Weishaus, 180 N.J. 131, 143 (2004) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Indeed, there is a 'strong public policy favoring stability of arrangements in matrimonial matters.'" Satz v. Satz, 476 N.J. Super. 536, 550 (App. Div. 2023) (quoting Quinn, 225 N.J. at 44), certif. denied, 256 N.J. 352 (2024). Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45.

"[T]he scope of review of an arbitration award is narrow. Otherwise, the purpose of the arbitration contract, which is to provide an effective, expedient,

and fair resolution of disputes, would be severely undermined." Fawzy v. Fawzy, 199 N.J. 456, 470 (2009). "Arbitration is a 'creature of contract.'" Minkowitz v. Israeli, 433 N.J. Super. 111, 132 (App. Div. 2013) (quoting Kimm v. Blisset, LLC, 388 N.J. Super. 14, 25 (App. Div. 2006)). "It is well-settled that New Jersey's strong public policy favors settlement of disputes through arbitration." Id. at 131. This "strong public policy" also favors "using arbitration in family litigation." Id. at 131-32.

"The object of arbitration is the final disposition, . . . and perhaps less formal manner[] of the controversial differences between the parties." Id. at 132 (quoting Hojnowski v. Vans State Park, 187 N.J. 323, 343 (2006)). Our Supreme Court has held that, like other contracts, "[w]hen a court in New Jersey is 'called on to enforce an arbitration agreement, [its] initial inquiry must be . . . whether the agreement to arbitrate . . . a dispute is "the product of mutual assent, as determined under customary principles of contract law."'" Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 137 (2020) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)). "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Skuse, 244 N.J. at 48 (quoting Kernahan, 236 N.J. at 319). In determining the enforceability of an arbitration agreement, "[n]o particular form of words is

necessary to accomplish a clear and unambiguous waiver of rights." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 444 (2014). Under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, "arbitration is fundamentally a matter of contract." Perez, 472 N.J. Super. at 247.

## III.

Plaintiff contends the arbitration award requiring defendant to give her a get is enforceable pursuant to the parties' binding MOU and signed arbitration agreement. We agree. The parties, represented by counsel, entered into the MOU compromising and in consideration of their respective positions. In hearing the terms of their agreement on the record, the judge recognized the parties' extensive negotiations and long-term litigation, stating, "We've been in court numerous times. . . . The matter has a very long history, I think dat[ing] back to late 2016." The parties' MOU provided that "both [parties] agreed" to appear before a beit din and "cooperate." Through comprehensive questioning, defense counsel clearly established defendant's understanding and assent to the MOU's provision to arbitrate the issue of a get. Further, the record demonstrated defendant agreed to be bound and abide by the arbitrator's decision. The plain language of the parties' handwritten MOU arbitration provision thirteen, and the memorialized terms stated on the record, established defendant submitted to the

11

jurisdiction of a rabbi and beit din. The parties' decision to arbitrate a religious marital matter was their right. See Satz, 476 N.J. Super. 552

Further, defendant did not appeal the judge's January 2022 order, which enforced the parties' MOU requiring them to arbitrate the issuance of the get before Rabbi Twersky and abide by his ruling. Indeed, defendant confirmed by email he had signed the arbitration agreement prior to the motion filing and agreed to accept Rabbi Twersky's decision, "his bei[t] din[,] and his protocol." Defendant's assertion that he later withdrew his signature after plaintiff signed the agreement is unsupported. Defendant has failed to posit any foundation for his alleged permissive withdrawal. Therefore, defendant was bound to arbitrate not only based on the signed arbitration contract, but also pursuant to the parties' MOU and the judge's order. "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Quinn, 225 N.J. at 45.

Plaintiff correctly argues the parties were free to enter into a contract with "the provision of a get" after the parties had "spent several years negotiating" their divorce agreement. The arbitration terms were sufficiently established by the parties. See N.J.S.A. 2A:23B-4 ("[A] party to an agreement to arbitrate or to an arbitration proceeding may waive or, the parties may vary the effect of, the

requirements of this act to the extent permitted by law."); see also Kernahan, 236 N.J. at 24.

Defendant's assertion that the judge correctly denied enforcement of the award because there was no verbatim record is misplaced. Again, defendant submitted to arbitration with Rabbi Twersky, consenting "that the arbitration be held and commence with the jurisdiction of the arbitrator(s) to continue until a final award is made." Our Supreme Court has determined that "the absence of a verbatim transcript [i]s not fatal." Johnson v. Johnson, 204 N.J. 529, 534 (2010). Here, defendant had not requested transcripts of the proceedings and had agreed to accept Rabbi Twersky's "protocol." The parties attended ten one-hour sessions before Rabbi Twersky, who issued a written decision directing defendant to provide plaintiff a get. As contemplated by the MOU, the written decision memorialized completion of the matter, as it was presented "before the world-renowned genius Rabbi Menachem Mendel haCohen Shafran and he approved it," and it was approved by Rabbi Tzvi Gertner for "present[ation] . . . before the [civil court] judge." For these reasons, we part ways with the judge's reasoning that the arbitration required "some sort of record of the proceeding."

We next turn to plaintiff's argument that enforcement of the award does not violate the Establishment and Free Exercise Clauses of the First

13

Amendment. The "Establishment Clause bars a state from placing its support behind a religious belief, while the Free Exercise Clause bars a state from interfering with the practice of religion." Satz, 476 N.J. Super. at 552 (citing U.S. Const. amend. I). The United States Supreme Court has held "that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 535 (2022) (quoting Town of Greece v. Galloway, 572 U.S. 565, 576 (2014)). Indeed, our "civil courts may resolve controversies involving religious groups if resolution can be achieved by reference to neutral principles of law, but that they may not resolve such controversies if resolution requires the interpretation of religious doctrine." Satz, 476 N.J. Super. at 533 (quoting Ran-Dav's Cnty. Kosher v. State, 129 N.J. 141, 162, (1992)). The New Jersey Supreme Court has recognized "that parties should be granted as much autonomy as possible in the ordering of their personal lives" and therefore "[i]t is fair and reasonable that parties who have agreed to be bound by arbitration in a formal, written separation agreement should be bound." Faherty v. Faherty, 97 N.J. 99, 107 (1984). Unquestionably, New Jersey has a strong public policy in favor of settling disputes through arbitration, including in family litigation. Minkowitz, 433 N.J. Super. at 131-32.

Here, confirmation of the award can be granted under neutral principles of law and without interpretation of religious doctrine. We therefore conclude the Establishment Clause is not violated because the parties' arbitration agreement regarding a get serves the "purpose of enforcing the parties' contractual obligations" and "encouraging divorce litigants to resolve disputes by negotiating and entering" into marital agreements. Satz, 476 N.J. Super. at 553.

Additionally, enforcement does not infringe on the Free Exercise Clause as the parties voluntarily entered into the MOU arbitration provision and agreement. The record demonstrates the parties freely and knowingly agreed to resolve the issuance of the get through arbitration; thus, we conclude there is no interference with their practice of religion.

In summary, we conclude confirmation of the award pursuant to the parties' MOU and separately signed arbitration agreement falls squarely within "principles of civil contract law, not rabbinical law." Ibid. Rabbi Twersky's decision to grant plaintiff the get under rabbinical law "remained solely within the province of the bei[t] din" and did not require interpretation by the judge. See ibid. Confirmation of the award strictly required a determination of defendant's contractual obligation. Therefore, we are constrained to reverse.

The parties' MOU, arbitration agreement, and Rabbi Twersky's decision mandate confirmation of the award requiring defendant provide plaintiff with a get in accordance with the beit din. For these reasons, we reverse and remand for the entry of an order consistent with this opinion.

To the extent that we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do no retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2160-22